

NUMBER 13-09-00213-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

UNIQUE STAFF LEASING, LLC, AND
UNIQUE STAFF LEASING I, LTD.,                                      Appellants,

v.

RICHARD ONDER,                                                           Appellee.

**On appeal from the County Court at Law No. 3
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellants, Unique Staff Leasing, LLC, and Unique Staff Leasing I, Ltd. (collectively

"Unique"), challenge the jury's verdict in a breach of contract case in favor of appellee,

Richard Onder. By four issues, Unique argues that: (1) the statute of frauds bars Onder's

claims for breach of an oral agreement for future commissions; (2) the statute of frauds bars Onder's claim for breach of a written agreement to pay future commissions because Onder could not establish that such a document existed and was signed by Unique, the party charged under the agreement; (3) the evidence is legally and factually insufficient to support Onder's recovery for breach of contract; and (4) if any agreement between Unique and Onder existed, Unique was excused from performing because Onder committed a prior material breach of the purported contract. We affirm as modified.

## I. BACKGROUND

### A. Agreements Between Onder and Unique

This dispute centers on whether an "Independent Contractor and Commission Agreement" that Onder and Unique purportedly executed in 2005 and an earlier oral agreement to pay commissions are enforceable. Unique is a "professional employer organization" that provides "staff leasing" and other employment services to businesses, including "human resources, payroll, workers compensation, healthcare, pension plans, safety [and] risk management, and claims services." Unique is based in Corpus Christi, Texas, but has branch offices in Houston, San Antonio, and McAllen, Texas. Bradford and his wife own Unique; Ernest Wayne Judge served as Unique's Regional Vice-President of Sales; and Greg Maisal is Unique's Vice-President of Sales and Marketing.

In February 2002, Onder was hired by Unique as a salesman.[1] Onder was tasked with soliciting and bringing new company clients to Unique. Judge recommended hiring

---

[1] At trial, Onder testified that Judge told him when he was hired that Unique has a continuing commissions program, which provided that Unique would continue to pay commissions to a salesman who left Unique, either voluntarily or involuntarily, for clients who continue to do business with Unique. On appeal, Unique admits that such a program exists but argues that only Bradford has the authority to enroll a salesman in the program and that Bradford never authorized Onder to be included in the program.

Onder because the two knew each other. Onder was classified as an at-will employee of Unique's, and, on July 30, 2004, he signed an "At-Will Agreement," which included a non-compete clause lasting for one year. In his pleadings, Onder asserted that he was originally hired based on verbal agreements and that, on July 30, 2004, Unique required that he signed the "At-Will Agreement." Onder acknowledged at trial that most discussions regarding his compensation were done verbally; in an affidavit, Onder noted that the parties agreed he would be paid "a salary of about a thousand dollars per week, health insurance and benefits, reimbursement for mileage and a one[-]percent commission for sales. The commission was to be paid monthly in [an] amount . . . based upon a client's payroll for the previous month."

On December 31, 2004, Unique sent Onder a letter terminating his employment with Unique. In this letter, Unique stated that:

> You failed to meet the $6,000,000 gross payroll sales objectives outlines for 2004. You only met 8% of the stated goals. On October 5, 2004[,] you were placed on a 90-day probationary review period and encouraged to meet a revised $900,000 payroll goal by the end of December 2004. You were fully aware of the communicated expectations and consequences related to low production levels. Your failure to attain the stated sales objectives is unacceptable and is the basis for your employment termination.

Nevertheless, Unique apparently desired to maintain a working relationship with Onder.[2] As such, Bradford sent Onder an e-mail on January 3, 2005, with an unsigned "Independent Contractor and Commission Agreement" attached. In his e-mail, Bradford instructed Onder to read, sign, and return the document to Bradford so that Onder could remain employed by Unique as an independent contractor. Onder printed the agreement, signed it, and mailed it back to Bradford from a local UPS store. The record does not

---

[2] Testimony at trial established that it was common for Unique to enter into an independent contractor relationship with recently-terminated sales people.

3

contain a copy of the agreement signed by Onder, Bradford, or an authorized representative of Unique; instead, an unsigned copy of the agreement is included in the record. At trial, Bradford denied that the alleged signed version of the contract could have been lost by Unique employees. Onder asserted that shortly thereafter, he was contacted by Maisel for tax information so that Onder could get set up in Unique's payroll system.

The parties apparently operated under the "Independent Contractor and Commission Agreement" for approximately two years, until February 7, 2007, when Bradford sent Onder a letter terminating his services.[3] In this letter, Bradford noted that:

---

[3] At trial, Bradford testified to the following regarding Onder's commissions:

| Q [Onder's trial counsel]: | If you did not have—if you knew you did not have a signed contract with Mr. Onder would you have paid him commissions? |
|---|---|
| A [Bradford]: | No. I would not. |
| Q: | When you sent him the letter terminating his commission in February of 07, did you think you had a signed contract at that time? |
| A: | Yes. I did. |
| Q: | And that was before this lawsuit was filed? |
| A: | Yes. |
| . . . . | |
| A: | You know, you can be a wordsmith as much as you want. You know, we felt like paragraph five in the independent contract states . . . that you're going to have to service the clients. . . . I don't give free money to nobody. |
| . . . . | |
| Q: | That's right. But you just said you don't pay out free money. In other words, all the efforts that Mr. Onder went through to land these clients and bring them to you, clients to Unique that Unique for the most part, you know, has enjoyed since the time of his termination, the termination of his commission, you know, that that's—his efforts aren't worth anything? |

4

Every year[,] we audit each client of Unique to find out how well we are doing[.] [T]his audit includes how well we are delivering services to include direct contact by our marketing representatives.

Greg Maisal phoned all active clients brought to Unique as a result of your marketing efforts. Each client informed Greg that you did not contact them during the calendar year 2006.

Paragraph five (5) of the Independent Contractor and Commission Agreement states "that you will continue to be paid compensation for accounts brought to Unique provided you actively market or service accounts for Unique."[4] This has not happened.

Effective March 1, 2007[,] we will no longer pay you commissions for business brought to Unique as a result of you[r] marketing efforts.

(Emphasis in original.) Unique discontinued paying Onder commissions, even though some of Onder's clients continued to do business with Unique.

## B.    Procedural Background

Onder later filed an original petition alleging that, by refusing to continue paying him commissions for his clients that remained with Unique, Unique had breached the "Independent Contractor and Commission Agreement" and the oral agreements that Judge and Onder entered into when Onder was first hired by Unique.[5]  Onder also asserted claims for unjust enrichment and attorney's fees and sought a declaration from the trial

---

A:    Mr. Tynan [Onder's trial counsel], he would still be being [sic] paid today if he had continued to honor the relationship that we set forth to him.  He was paid handsomely from the day he brought those clients on to us until I cancelled that contract.

[4] Contrary to Bradford's assertions in his February 7, 2007 letter, paragraph five of the "Independent Contractor and Commission Agreement" provides that "[t]he sales commission shall be paid monthly, no later than ten (10) days following the end of the month in which the Sales Commission was earned.  Richard Onder will continue to be paid compensation for accounts brought to Unique provided he actively markets or services *prospective* accounts for Unique."  (Emphasis added.)

[5] Bradford was named as a party to the suit; however, because Onder did not submit questions to the jury regarding Bradford's liability, the trial court ordered that Onder take nothing from Bradford.  Accordingly, Bradford is not a party to this appeal.

court that he was entitled to the commissions at issue pursuant to the "Independent Contractor and Commission Agreement." Unique filed its original answer generally denying Onder's allegations and asserted counterclaims for attorney's fees and a declaration that Onder is no longer entitled to the payment of commissions under the "Independent Contractor and Commission Agreement" considering he was terminated. Unique also pleaded that the contract violated the statute of frauds and was, therefore, unenforceable.

Thereafter, Unique filed a traditional motion for partial summary judgment, arguing that: (1) the complained-of contract was governed by the statute of frauds; (2) the complained-of contract did not satisfy the statute of frauds; and (3) Onder's breach of contract claim failed as a matter of law. After a hearing, the trial court denied Unique's motion for summary judgment.

In early September 2008, trial commenced in this matter. After several days of testimony, the jury returned a verdict favorable to Onder. Specifically, the jury concluded that: (1) Onder and Unique agreed that Onder would continue to be paid commissions (the agreement allegedly entered into by Judge and Onder when Onder was first hired), even after his employment with Unique was terminated; (2) Unique failed to comply with the commissions agreement; (3) Unique's failure to comply with the oral commissions agreement was not excused; (4) the parties intended to conduct business electronically, and both parties agreed to be bound by the "Independent Contractor and Commission Agreement"; (5) Unique failed to comply with the "Independent Contractor and Commission Agreement"; and (6) Unique's failure to comply was not excused. Given its liability findings,

6

the jury awarded Onder $52,025.11 in lost commissions.[6]  The trial court signed its final judgment adopting the jury's findings on January 26, 2009, and awarded Onder an additional $3,117.96 in pre-judgment interest, $21,750 in attorney's fees for trial preparation, $15,000 in attorney's fees for an appeal to this Court, attorney's fees for an appeal to the supreme court, and interest in the amount of 5% per annum.

Unique subsequently filed a motion for new trial, which was overruled by operation of law.  *See* TEX. R. CIV. P. 329b(c).  This appeal followed.

## II.  THE STATUTE OF FRAUDS

In their first and second issues, Unique argues that the "Independent Contractor and Commission Agreement" and the oral agreements between Judge and Onder violate the statute of frauds and are therefore unenforceable because the agreements could not be performed within one year of their making and were not signed by the party charged with the agreement—Unique.  Unique also contends that the parties did not intend to conduct business electronically, and the attachment of the unsigned contract to an e-mail in which Bradford typed his name does not constitute an electronic signature or satisfy the requirements for an enforceable electronic transaction.  Onder counters by arguing that the contract is not subject to the statute of frauds because the agreement could be performed

---

[6] The trial court's judgment reflects that the jury awarded Onder $51,983.66 in damages for his breach of contract claim and that the trial court adopted the jury's findings.  However, the judgment does not coincide with the jury's answer to "Question No. 7" of the jury charge, which asks about the amount of damages Onder sustained.  In response to "Question No. 7," the jury answered that Onder sustained $52,025.11 in damages.  Because we have sufficient information in the record, we reform the trial court's judgment to reflect the damages awarded to Onder by the jury—$52,025.11.  *See UMLIC VP LLC v. T&M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 610 (Tex. App.–Corpus Christi 2005, pet. denied); *GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 423 (Tex. App.–Corpus Christi 1998, pet. denied) (holding that if a trial court errs in computing damages, the appellate court may reform the amount of damages); *see also Travelers Ins. Co. v. Martin*, 28 S.W.3d 42, 47 (Tex. App.–Texarkana 2000, no pet.) ("A reviewing court has the power to modify the amount of recovery and reform a damages award.").

7

within one year of its making, in accordance with its own terms.[7]  Onder further argues that the contract was electronically signed by Bradford and that Onder accepted Unique's offer of employment as an independent contractor by signing the agreement and returning a hard copy to Unique by mail, as Unique requested.  In the alternative, Onder asserts that if the contract falls within the statute of frauds, Unique partly performed under the contract and cannot accept the benefits of Onder's performance "and now urge that the contract is not enforceable pursuant to the [s]tatute of [f]rauds."

## A.    Applicable Law

The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in writing and signed by the parties. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 142 (Tex. App.–Corpus Christi 2006, pet. denied).  It bars enforcement of contracts that cannot be performed within one year unless the contract is in writing and signed by the party to be charged with the promise.  TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6) (Vernon 2009); *see Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010); *see also Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 763 (Tex. App.–Corpus Christi 2004, no pet.).  Generally, whether a contract falls within the statute of frauds is a question of law.  *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795, 796 (1961); *Lathem v. Kruse*, 290 S.W.3d 922, 926 (Tex. App.–Dallas 2009, no pet.); *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149 (Tex. App.–Houston [1st Dist.] 2005, pet. denied); *Choi v. McKenzie*, 975 S.W.2d 740, 743 (Tex. App.–Corpus Christi 1998, pet.

---

[7] On appeal, Onder does not respond to Unique's contentions regarding the alleged oral agreements between Judge, a representative of Unique, and Onder.

denied). We review questions of law de novo. *El Paso Natural Gas Co. v. Minco Oil &*
*Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999); *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex.
App.–Houston [14th Dist.] 2001, no pet.).

The statute of frauds in an affirmative defense, which is waived if not pleaded. *See*
TEX. R. CIV. P. 94; *see also Phillips v. Phillips*, 820 S.W.2d 785, 791 (Tex. 1991); *Garrod*
*Invs., Inc.*, 139 S.W.3d at 763. The party pleading the statute of frauds bears the initial
burden in establishing its applicability. *See Otto Vehle & Reserve Law Officers Ass'n v.*
*Brenner*, 590 S.W.2d 147, 152 (Tex. Civ. App.–San Antonio 1979, no writ). Once it is
established that the statute of frauds applies, the burden of proof shifts to the plaintiff to
establish facts which would take the oral contract out of the statute, thus allowing the oral
promise to be enforceable. *See id.* "Whether the circumstances of a particular case fall
within an exception to the statute of frauds is generally a question of fact." *Adams v.*
*Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.–Houston [1st Dist.] 1988, writ denied);
*see Brenner*, 590 S.W.2d at 152 (stating that a plaintiff must establish facts which take an
oral contract outside the statute of frauds). The party seeking to benefit from an exception
to the statute of frauds bears the burden of pleading and proving an exception. *Mann v.*
*NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex. App.–Dallas 1992, no writ). In addition,
unless the evidence conclusively establishes an exception, a party must secure a favorable
jury finding on the exception. TEX. R. CIV. P. 279; *Barbouti v. Munden*, 866 S.W.2d 288,
295 (Tex. App.–Houston [14th Dist.] 1993, writ denied), *overruled on other grounds by*
*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex.
1998).

To satisfy the statute of frauds, there must be a written memorandum which "must

be complete within itself in every material detail and must contain all the essential elements of the agreement, so that the contract can be ascertained from the writing without resorting to oral testimony." *Garrod Invs., Inc.*, 139 S.W.3d at 763 (citing *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)); *see Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 594 (Tex. App.–Houston [14th Dist.] 2000, no pet.); *Bachman Ctr. Corp. v. Sale*, 359 S.W.2d 290, 294 (Tex. Civ. App.–Dallas 1962, writ ref'd n.r.e.) ("[T]he essential elements of a contract required to be in writing may never be supplied by parol [evidence].").

**B.      The "Independent Contractor and Commission Agreement" and the Applicability of the Statute of Frauds**

Here, Unique timely pleaded its statute of frauds affirmative defense; thus, it bore the initial burden of proving the applicability of the statute of frauds to this dispute. *See* TEX. R. CIV. P. 94; *Phillips*, 820 S.W.2d at 791; *see also Brenner*, 590 S.W.2d at 152. Among its arguments on appeal, Unique contends that the agreement is not enforceable because a copy of the contract signed by Unique and Onder, the parties to the contract, was never produced at trial. This contention is premised on the assumption that the statute of frauds applies and that the agreement needed to be in writing and signed by the parties. *See Haase*, 62 S.W.3d at 799; *see also Barrand, Inc.*, 214 S.W.3d at 142.

The record contains a copy of the "Independent Contractor and Commission Agreement," which was not signed by either party. Onder testified that this contract is the agreement between Unique and him regarding his independent-contractor status and commissions. The record also contains an e-mail sent from Bradford to Onder with the complained-of contract attached. In this email, Bradford stated the following: "Please read and sigh [sic]. If you have any questions[,] do not hesitate calling. Garry." Onder replied

10

to Bradford's e-mail with an e-mail of his own. The following are the contents of Onder's e-mail response:

> Dear Garry, Thank You so much for e[-]mailing me the contract[.] I will be reviewing it to sign in the next day or two. One correction I immediately caught, was my zip code needs to be corrected. It is 78231. Will contact you shortly. Thanks again for this opportunity[.] Richard Onder.

Onder testified that he signed the contract and mailed it back to Unique, as was requested. In deposition testimony, Bradford denied ever receiving the signed contract from Onder and denied that the document may have been misplaced or lost. However, in his trial testimony, Bradford alludes to the "Independent Contractor and Commission Agreement" as the contract the parties operated under from January 3, 2005 to February 7, 2007. Furthermore, in the February 7, 2007 termination letter that he drafted, Bradford recognized the existence of the contract when he explicitly referenced paragraph five of the contract as the grounds for terminating Onder. Nevertheless, whether Onder signed the contract and whether Unique received the contract were fact issues for the jury to determine, and with its verdict, the jury concluded that Onder signed the contract; Onder mailed it to Unique; Unique received the contract; and Unique and Onder accepted the terms of the contract and began performing, thus making the contract enforceable.

Despite the jury's conclusions, Unique argues that the contract is unenforceable because Onder and a representative from Unique did not sign the contract. Even assuming that the statute of frauds applies, we hold, based on the record before us, that a reasonable juror could have concluded that Onder signed the contract and mailed it back to Unique, as was requested, and that Unique accepted the contract by performing in accordance with the contractual terms for approximately two years as if Onder had actually accepted the terms

11

of the contract by signing. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) (stating that, we credit evidence favorable to the jury's verdict if a reasonable juror could have so found and disregard contrary evidence unless a reasonable juror could not have so found—the standard for legal sufficiency); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) (same); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (same). Furthermore, Bradford admitted in his testimony that he believed he had an enforceable contract with Onder. Texas courts have held that "[a] contract containing mutual obligation that has been reduced to writing and signed by one of the parties can be accepted by the non-signing party by their conduct, thus making it a binding agreement on both parties." *MG Bldg. Materials, Inc., v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 62 (Tex. App.–San Antonio 2005, pet. denied) (citing *Hearthshire Braeswood Plaza Ltd. P'ship v. Billy Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App.–Houston [14th Dist.] 1993, writ denied); *Velasquez v. Schuehle*, 562 S.W.2d 1, 3 (Tex. Civ. App.–San Antonio 1977, no writ) ("To constitute a valid contract in writing[,] it is not necessary that the agreement be signed by both parties, for i[f] one party signs, the other may accept by his acts, conduct, or acquiescence in the terms of the contract.")). Based on the evidence, we reject Unique's argument that the contract is unenforceable because the record is devoid of a copy of the contract signed by Unique. *See MG Bldg. Materials, Inc.*, 179 S.W.3d at 62; *Billy Kelly Co.*, 849 S.W.2d at 392; *Velasquez*, 562 S.W.2d at 3.

We further reject Unique's contention that the contract is unenforceable because it cannot be completed within one year. In arriving at this conclusion, we must look to the specific language contained in the agreement. The agreement expressly provides that the term of the agreement "is for one year commencing on the effective date of this

12

Agreement." The agreement further provides that it:

> shall automatically renew for additional one[-]year terms unless either party gives sixty (60) days written notice to the other party before the expiration of any term of their desire to terminate this Agreement for cause. Richard Onder shall be entitled to continue to receive the total compensation (as defined below) from Unique for customers that Richard Onder delivered to Unique during the term of this Agreement or any renewed term for so long as Richard Onder complies with paragraph five.

Paragraph five of the agreement states, in relevant part, that:

> Richard Onder shall be paid between .50%-1.00% of each customers['] gross payroll on business booked based on contract quotes from client companies. . . . The sales commission shall be paid monthly, no later than ten (10) days following the end of the month in which the Sales Commission was earned. Richard Onder will continue to be paid compensation for accounts brought to Unique provided he actively markets or services prospective accounts for Unique.

The plain language of the agreement clearly states that the term of the agreement is for one year, meaning that it could be performed, by its own terms, within one year. "If a contract can, from the terms of the agreement, be performed within one year[,] it is not within the [s]tatute of [f]rauds." *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974); *see Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) ("[W]here the agreement, either by its terms or *by the nature of the required acts*, cannot be completed within one year, it falls within the statute [of frauds] and must therefore be in writing.") (emphasis in original); *Hall v. Hall*, 308 S.W.2d 12, 14 (Tex. 1957) (stating that a contract does not fall within the statute of frauds unless it appears "from the terms of the contract that performance cannot be completed within one year"); *see also Chevalier v. Lane's*, 147 Tex. 106, 213 S.W.2d 530, 532 (1948) (noting that the statute of frauds does not apply "where the agreement may, by its own terms, be fully performed within the year"). The supreme court also stated that "where [a] contract omits the performance terms, duration may

properly be implied from extrinsic evidence.  If that evidence conclusively proves that the contract cannot be completed within one year . . . the . . . contract violated the [s]tatute of [f]rauds as a matter of law."  *Niday*, 643 S.W.2d at 920 (citing *Krueger v. Young*, 406 S.W.2d 751, 755-56 (Tex. Civ. App.–Eastland 1966, writ ref'd n.r.e.)).  Here, the contract has specific performance terms that can be completed within one year of its making; thus, we conclude that the "Independent Contractor and Commission Agreement" does not fall within the statute of frauds.[8]

Unique has repeatedly argued that the term of the agreement exceeded one year in duration, since the purported effective date of the agreement was January 3, 2005, and the agreement was finally terminated by Unique on February 7, 2007. In support of this contention, Unique relies heavily on this Court's decision in *Barrand*.  We do not find Unique's argument to be persuasive, and we find the *Barrand* case to be distinguishable from the facts in this case.

The dispute in *Barrand* pertained to a settlement agreement between Whataburger and various franchisees, including Barrand.  *See* 214 S.W.3d at 127.  The settlement agreement arose from a prior lawsuit brought by several franchisees regarding an "improper rebate program between Whataburger and the suppliers that sell goods to Whataburger's franchisees."  *Id.*  The settlement agreement dictated that franchisees receive varying amounts of cash reimbursements and be allowed to execute new franchise agreements.  *Id.* The new franchise agreements, otherwise referred to as modified franchise agreements,

---

[8] Because the "Independent Contractor and Commission Agreement" purportedly encapsulates the oral agreements allegedly entered into between Judge and Onder and Onder appears to assume as such in his appellate brief, we need not address Unique's argument pertaining to the oral agreements, given our discussion and disposition regarding the "Independent Contractor and Commission Agreement."  *See* TEX. R. APP. P. 47.1, 47.4.

14

granted the franchisees the right to operate restaurants under the Whataburger system for an initial ten-year period and granted the franchisees the right to renew their franchise agreements for two successive five-year terms. *Id.* The language included in the settlement agreement became the basis for the lawsuit filed by Whataburger. *Id.* Barrand filed counterclaims against Whataburger, which included a claim involving a purported contractual right to develop new restaurants. *Id.* at 140-42. Barrand alleged that it entered into various oral agreements in 1994 and 1998, with Whataburger to develop new restaurants. Whataburger, in an answer to Barrand's counterclaims, argued that the oral agreements were unenforceable under the statute of frauds because they could not be completed within one year. *Id.* at 141-42. It was undisputed that "the agreement[s] could not be performed within one year because [they] entailed a 'permanent' obligation for Whataburger to allow new store development." *Id.* at 141. In response to Barrand's counterclaims, Whataburger filed a motion for summary judgment, which was granted by the trial court. *Id.* at 127-28. On appeal, Barrand claimed that summary judgment was improper because Whataburger "failed to produce any evidence to establish that the agreement[s] could not be performed within one year." *Id.* at 141. We noted that the first purported oral agreement between Barrand and Whataburger took place in 1994, the alleged breach of the agreement took place in 2001, and the oral agreement was related to the ten-year settlement agreement and concluded that the oral agreements between Barrand and Whataburger fell within the statute of frauds. *Id.* at 141-42.

We find the facts in *Barrand* to be distinguishable from the present case because Barrand admitted that Whataburger's obligations to allow franchisees to develop new restaurants were "permanent" and "the agreement could not be performed within one year."

15

*Id.* at 141. Here, the specific language of the Independent Contractor and Commission Agreement provides for one-year terms with automatic renewals for additional one-year terms, unless an intent to terminate is timely expressed in writing. Thus, the complained-of contract can be completed within one year.

Unique argues that the parties' testimony at trial demonstrates that they intended for the contract to last several years, as long as clients stayed with Unique. Unique directs us to testimony that, on average, clients stayed with Unique for five years. This evidence, however, is irrelevant given that the language of the contract governs and the contract is the embodiment of the parties' intent. Unique's attempt to use parol evidence, i.e. the parties' testimony, to contradict the unambiguous terms of the contract is impermissible. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (stating that, under the parol evidence rule, extrinsic evidence is ordinarily not admissible to add to, vary, or contradict the terms of a written contract that is clear on its face); *see also Villarreal v. Art Inst. of Houston, Inc.*, 20 S.W.3d 792, 796-97 (Tex. App.–Corpus Christi 2000, no pet.) (same).

Furthermore, Unique has not cited, nor are we aware of, binding authority stating that we ignore the express terms of the purported agreement and, instead, focus on how many renewal terms were executed or how long the agreement actually remained in force. *See Hampton v. Lum*, 544 S.W.2d 839, 841 (Tex. Civ. App.–Texarkana 1976, no writ) (concluding that the "term" in a written lease for the conveyance of real property has a technical meaning and that the term in the lease was for two years when the language of the lease provided that the original lease term was for one year with an automatic renewal

16

option of one year)[9]; *see also Sullivan v. Leor Energy LLC*, 600 F.3d 542, 547 (5th Cir. 2010) (pertaining to an employment contract and stating that "under Texas law, a contract for a stated term longer than one year is not taken out of the statute of frauds when there is a mere possibility of termination within one year due to contingent events set forth in the contract, including termination by a party. . . . [T]he possibility that a party to a contract might die less than a year after a contract with a term of more than one year was consummated does not take the agreement out of the statute of frauds"); *Gulf Coast Mar. Assocs. v. C-Port Galveston*, Civil Action No. G-04-308, 2005 U.S. Dist. LEXIS 27950, at *5 (S.D. Tex. Nov. 8, 2005) (involving a written lease for real estate). Based on the foregoing, we conclude that the "Independent Contractor and Commission Agreement" could have been performed within one year and, thus, was not subject to the statute of frauds.[10]  *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6); *see also Schroeder*, 813

---

[9] We find the *Hampton v. Lum* decision to be distinguishable from the facts in this case because the dispute involved a lease governing the conveyance of real property; furthermore, the renewal option was exercised by a lessee vis-a-vis the lessor.  544 S.W.2d 839, 840 (Tex. Civ. App.–Texarkana 1976, no writ) (stating that the automatic renewal option is "treated as a present demise for the full period of time to which the lease may be extended subject to defeasance by a condition subsequent").  In the instant case, the agreement provided that the lease would automatically renew for an additional one-year term; however, it gave both parties the right to terminate the agreement after giving proper notice.  Moreover, the agreement in this case did not involve the conveyance of real property.  *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4) (Vernon 2009) (stating that a contract for the sale of real estate must comport with the statute of frauds), (b)(5) (providing that a lease of real estate for a term longer than one year must comply with the statute of frauds or, in other words, must be in writing and signed by the parties charged with performance).

[10] Because we have concluded that:  (1) the "Independent Contractor and Commission Agreement" is not subject to the statute of frauds; (2) reasonable jurors could have concluded that Onder signed the agreement and mailed it to Unique, as requested; and (3) Unique accepted the terms of the agreement by performing under the agreement for approximately two years, it was not necessary that Unique sign the contract in order to be bound by the contract.  See TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6) (Vernon 2009); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010); *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 763 (Tex. App.–Corpus Christi 2004, no pet.); *see also MG Bldg. Materials, Inc., v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 62 (Tex. App.–San Antonio 2005, pet. denied); *Hearthshire Braeswood Plaza Ltd. P'ship v. Billy Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App.–Houston [14th Dist.] 1993, writ denied); *Velasquez v. Schuehle*, 562 S.W.2d 1, 3 (Tex. Civ. App.–San Antonio 1977, no writ).  Furthermore, we cannot say that the jury was unreasonable in concluding that the parties agreed to transact business electronically, especially while Onder was designated as an independent contractor.  *See* TEX. BUS. & COM CODE ANN. §§ 322.005(a) ("This chapter does not require a record or signature to be created, generated, sent,

S.W.2d at 489; *Garrod Invs., Inc.*, 139 S.W.3d at 763. Accordingly, we overrule Unique's first two issues.

### III. LEGAL AND FACTUAL SUFFICIENCY

By their third and fourth issues, Unique and Bradford assert that the evidence supporting the jury's verdict is legally and factually insufficient. We disagree.

**a.     Standard of Review and Applicable Law**

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the jury's verdict and indulge every reasonable inference that supports it. *Id.* at 821-22; *Harris County v. Vernagallo*, 181 S.W.3d 17, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.); *Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694, 705 (Tex. App.–Houston

---

communicated, received, stored, or otherwise processed or used by electronic means or in electronic form."), 322.007(b) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.") (Vernon 2009). This conclusion is supported by Onder's testimony that most of his conversations with Unique management from 2005 to 2007 was by e-mail, the record contains several e-mails documenting conversations between Unique management and Onder, and the fact that Unique utilized electronic means to send Onder the independent contractor agreement. *See id.* § 322.005(b) ("Whether the parties agree to conduct a transaction by electronic means is determined from the *context and surrounding circumstances, including the parties' conduct*.") (emphasis added). We do note that Bradford testified that he does not regularly execute contracts electronically and that his insurance company did not allow him to sign contracts electronically; however, this testimony is dubious considering Bradford later admitted that he believed he had a valid contract with Onder and Unique paid Onder commissions for approximately two years. Unique did not contend that the "Independent Contractor and Commission Agreement" was an unenforceable contract until Onder filed his lawsuit. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) ("It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the jury. It is an equally familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony.") (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex. 1982)).

[14th Dist.] 2005, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *See City of Keller*, 168 S.W.3d at 827-28; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705. We must credit favorable evidence if a reasonable trier of fact could have so found, and disregard contrary evidence unless a reasonable trier of fact could not have so found. *Ingram*, 288 S.W.3d at 893; *Hogue*, 271 S.W.3d at 248; *City of Keller*, 168 S.W.3d at 827. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705. Moreover, in reviewing the sufficiency of the evidence, we may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Scoggins Constr. Co. v. Dealers Elec. Supply Co.*, No. 13-06-00368-CV, 2009 Tex. App. LEXIS 8171, at *9 (Tex. App.–Corpus Christi Oct. 22, 2009, pet. denied) (mem. op. on remand).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the case and set aside the verdict and remand the cause for a new trial, if we conclude, viewing the evidence in a neutral light, that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some "evidence of probative force" in support of the verdict. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. *Jackson*, 116 S.W.3d at 761-62. If we determine that the evidence supporting the jury's verdict is not supported by factually sufficient evidence, we must "detail

19

the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

In order for a contract to be enforceable, there must be an offer, an acceptance in strict compliance with the terms of the offer, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 291 (Tex. App.–Corpus Christi 2003, pet. denied); *see also Johnson v. Aransas County Navigation Dist., No. 1*, No. 13-06-601-CV, 2008 Tex. App. LEXIS 7324, at *8 (Tex. App.–Corpus Christi Oct. 2, 2008, pet. denied) (mem. op.). All of these elements must be met in order for the contract to be enforceable. *See Brownsville Barge & Crane, Inc.*, 115 S.W.3d at 291.

On the other hand, to recover for breach of contract, a plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) harm to the plaintiff as a result of the breach. *See Adams v. H&H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.–Corpus Christi 2001, no pet.); *see also Beckham Resources, Inc. v. Mantle Resources, L.L.C.*, No. 13-09-00083-CV, 2010 Tex. App. LEXIS 1323, at *22 (Tex. App.–Corpus Christi Feb. 25, 2010, pet. filed).

**b.     Discussion**

In the instant case, the jury concluded that Unique breached the "Independent Contractor and Commission Agreement" by discontinuing the payment of commissions to Onder and that Unique's breach was not excused. The jury did not conclude that Onder breached the agreement. However, on appeal, Unique argues that the evidence

establishes that: (1) Unique did not agree to pay Onder commissions to not service the clients or, in other words, a valid, enforceable contract did not exist; (2) Unique did not breach any agreements with Onder; (3) the complained-of breaches, if any, were excused or justified by good cause; and (4) Onder failed to introduce legally sufficient evidence of recoverable damages. The majority of Unique's sufficiency arguments are premised on the allegation that Onder did not service his clients in compliance with the "Independent Contractor and Commission Agreement"; therefore, Unique was justified in terminating the contract. We will analyze these contentions first.

### 1. The Purported Material Breach of the Contract by Onder

In order to analyze Unique's contentions regarding Onder's purported breach of contract, we must examine the contents of the agreement. Bradford's February 7, 2007 termination letter to Onder stated that Onder failed to comply with paragraph 5 of the "Independent Contractor and Commission Agreement." As noted earlier, paragraph 5 of the agreement provides that:

> Richard Onder shall be paid between .50%-1.00% of each customers['] gross payroll on business booked based on contract quotes from client companies. . . . The sales commission shall be paid monthly, no later than ten (10) days following the end of the month in which the Sales Commission was earned. Richard Onder will continue to be paid compensation for accounts brought to Unique provided he actively markets or services *prospective* accounts for Unique.

(Emphasis added.) Unique argues that the language of the contract directing Onder to service "prospective accounts" means that Onder was required by contract to actively service all clients he brought to Unique; ostensibly, Unique argues that the language of the contract is ambiguous and seeks to explain the intent of the parties to the contract by using parol evidence—the testimony of Bradford and Judge. To properly analyze this argument,

21

we must resort to the rules of contract interpretation in order to determine whether Onder breached the agreement and, thus, committed a prior material breach which relieved Unique of performing under the contract.

The rules of contract construction are well-established. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) ("An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations."). Conflicting interpretations of a contract, and even unclear or uncertain language, do not necessarily mean a contract is ambiguous. *See Kurtz v. Jackson*, 859 S.W.2d 609, 611 (Tex. App.–Houston [1st Dist.] 1993, no writ); *see also Shields v. Delta Lake Irrigation Dist.*, No. 13-01-622-CV, 2006 Tex. App. LEXIS 4082, at *14 (Tex. App.–Corpus Christi May 11, 2006, pet. denied) (mem. op.). "The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Further, "[w]hen a contract is not ambiguous, the construction of the written instrument is a question of law for the court . . . ." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *see City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).

Generally, where an unambiguous writing has been entered into between the parties, courts will give effect to the intention of the parties as expressed or as apparent in the writing. *See Spooner Addition Water Co.*, 432 S.W.2d at 518; *see also Shields*, 2006 Tex. App. LEXIS 4082, at *30. Usually, the instrument alone will be deemed to express the intentions of the parties for it is the objective, not subjective, intent that controls. *See Spooner Addition Water Co.*, 432 S.W.2d at 518; *see also Shields*, 2006 Tex. App. LEXIS 4082, at **30-31. Our primary concern interpreting the "Independent Contractor and

22

Commission Agreement" is to give effect to the intentions of the parties as expressed in the instrument. *See R & P Enter. v. Laguarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex. 1980); *see also Shields*, 2006 Tex. App. LEXIS 4082, at * 31.

After reviewing the "Independent Contractor and Commission Agreement," we cannot say that the contractual language is ambiguous. As noted earlier, the contract was promulgated by Unique and sent to Onder for acceptance. *See AT&T Corp. v. Rylander*, 2 S.W.3d 546, 559 (Tex. App.–Austin 1999, pet. denied) ("As a general rule, writings are construed strictly against the author and in a manner so as to reach a reasonable result that is consistent with the intent of the parties."); *see also Lara Energy, Inc. v. Yuma Petroleum Co.*, No. 13-98-435-CV, 2000 Tex. App. LEXIS 1942, at *9 (Tex. App.–Corpus Christi Mar. 23, 2000, pet. denied) (not designated for publication) ("The rule of construction urged by Lara in the present appeal, i.e., that a contract is construed against its drafter, does not apply unless the contract is found to be ambiguous.") (citing *Rylander*, 2 S.W.3d at 558-59; *GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 290 (Tex. App.–Houston [1st Dist.] 1997, writ denied); *Kincaid v. Gulf Oil Corp.*, 675 S.W.2d 250, 256 (Tex. App.–San Antonio 1984, writ ref'd n.r.e.)). The specific language of the contract only requires Onder to service "prospective accounts." Nowhere in the contract is language requiring Onder to service all clients he brought to Unique.[11]

Used in its ordinary context, the term "prospective" is defined as "[a]nticipated or

---

[11] The "Independent Contractor and Commission Agrrement" also includes a later-mentioned clause—the "Miscellaneous" clause at the end of the contract—which provides that: "This agreement includes all customers currently obtained by Richard Onder and those obtained in the future by Richard Onder under this agreement or any other prior agreement. All business written by Unique is our business." Based on our reading of the four corners of the contract, we do not believe that this clause specifically requires Onder to service all clients he brought to Unique. First, the "Miscellaneous" clause does not specifically refer to the servicing of any clients. Second, Bradford, in his February 7, 2007 letter, specifically referenced paragraph five of the agreement as the basis for Onder's termination, and, as noted earlier, paragraph five only required Onder to service "prospective accounts."

23

expected; likely to come about." BLACK'S LAW DICTIONARY 1342 (9th ed. 2009); *see* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 937 (10th ed. 1996) (defining "prospective" as "likely to come about" or "likely to be or become"). Further, Bradford testified via deposition that "[p]rospective accounts would be if he's [Onder] out marketing to bring on new business" and that "[a]n active account would be one that was brought to us by either an independent contractor or by an employee of Unique." Therefore, based on the contract and the ordinary meaning of the term "prospective," we disagree with Unique's interpretation that the specific language of the contract required Onder to service all of the clients he brought to Unique. Instead, the contract only required Onder to service those clients that were "anticipated," "expected," or likely to become clients of Unique.[12] *See* BLACK'S LAW DICTIONARY at 1342; *see also* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY at 937. Given this conclusion, we must now determine whether the evidence supporting the jury's implicit conclusion that Onder did not breach the "Independent Contractor and Commission Agreement" is sufficient.

Regarding Onder's purported breach of the contract, Unique argues they were entitled to terminate the purported contract because Onder committed the first material breach by failing to "service his clients." We disagree.

"In the standard contract dispute, one party cancels the contract or refuses to pay due to alleged breaches by the other; in such circumstances, jurors will often find both parties failed to comply with the contract . . . unless instructed that they must decide who committed the first material breach." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134

---

[12] This interpretation of the contract is supported by testimony from Onder, Judge, and Bradford specifying that Unique has a very proactive and diligent customer service department that regularly calls clients and assists clients with their problems.

24

S.W.3d 195, 2000 (Tex. 2004) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex. 1981) (stating that default by one contracting party excuses performance by the other)). Further, "[i]t is a fundamental principal of contract law that when one party commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co.*, 134 S.W.3d at 196.

Here, the jury was not specifically asked whether Onder breached the purported contract. Rather, the jury was asked the following: "Was Unique Staff Leasing's failure to comply with the agreement, if any, excused? Failure to comply by Unique Staff [L]easing is excused by Richard Onder's failure to comply, if any, with a material obligation of the same agreement." To this question, the jury concluded that Unique's failure to comply with the agreement was not excused; thus, the jury implicitly determined that Onder did not breach the purported contract, much less commit the first material breach of the contract. Unique argues that the jury's decision is contrary to the evidence in the record because Onder admitted that he did not call his clients on a monthly basis and some of Onder's clients acknowledged that they had not heard from him in some time. Onder explained that he did not contact most of his clients regularly because he was not instructed that he had to, and he was preoccupied with a divorce. Just prior to Onder's termination, Maisel contacted all of Onder's clients to see if Onder had recently contacted them. Maisel made notes of the contents of his calls to Onder's clients, and these notes were entered into evidence. Maisel's notes indicated that: (1) several of Onder's clients did not respond to Maisel's calls and messages; and (2) a few of Onder's clients had not heard from him in a long time. Maisel admitted in his testimony, however, that a couple of Onder's clients had in fact been contacted by Onder. In his testimony, Onder stated that the contract provided

25

that he needed only contact and service "prospective clients" rather than clients already doing business with Unique and that Unique had an excellent customer service staff that regularly called and assisted clients that Onder had already brought to Unique. Judge, Bradford, and Maisel each tried to contradict Onder's testimony by noting that Bradford regularly conducted meetings with independent contractors and encouraged the independent contractors to regularly contact their clients. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (holding that an unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imparts); *see also Netrana, L.L.C. v. TXU Bus. Servs. Co.*, No. 13-08-00264-CV, 2009 Tex. App. LEXIS 8754, at *14 (Tex. App.–Corpus Christi Nov. 12, 2009, no pet.) (mem. op.) (same). However, neither Judge, Bradford, nor Maisel informed Onder exactly how often he should contact the clients. The record reflects that Onder brought clients to Unique during the relevant time period—January 2005 to February 2007—and that Unique compensated Onder according to the compensation provision of the "Independent Contractor and Commission Agreement."

In light of our earlier analysis of the language of the contract, specifically the term "prospective," we cannot say that a reasonable fact-finder could reject Onder's testimony and the unambiguous language of the contract in light of Bradford, Judge, and Maisel's testimony or Maisel's notes. Clearly, the contract only required Onder to service "prospective accounts," not the clients that he had already secured for Unique. Unique's customer service department was designed to service the needs of existing clients. Therefore, based on the unambiguous language of the contract, it is irrelevant whether

26

Onder provided service to pre-existing Unique customers. As such, we cannot say that the jury was unreasonable in implicitly concluding that Onder did not commit a material breach of the contract.

### 2. Unique's Damages Argument

As a sub-issue, Unique also asserts that the evidence supporting Onder's claim for damages is legally insufficient.[13] In particular, Unique contends that Onder improperly submitted benefit of the bargain damages rather than the appropriate measure of damages—reliance damages. We first note that Unique's entire damages argument is premised upon a finding that the "Independent Contractor and Commission Agreement" is subject to the statute of frauds, a contention that we have rejected earlier in this opinion, and the application of the partial performance exception to the statute of frauds. In any event, Unique relies on the decisions in *Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) and *Exxon v. Breezevale Ltd.*, 82 S.W.3d 429, 441 (Tex. App.–Dallas 2002, no pet.) to support its damages argument and asserts that it is grossly unfair to award Onder $52,025.11 in damages for contacting a few clients on the telephone and speaking for less

---

[13] Onder contends that Unique waived its damages argument by failing to object to the question in the jury charge pertaining to damages. *See Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987) (stating that "[a] party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection" and holding that appellant waived his arguments pertaining to the submission of damages in a jury charge by not objecting in the trial court); *Am. Transfer & Storage Co. v. Reichley*, 560 S.W.2d 196, 199-200 (Tex. Civ. App.–Amarillo 1977, writ ref'd n.r.e.) ("Unless a party objects to the charge on the ground that it submits an improper measure of damages, he waives the objection and cannot complain on appeal that the charge permitted the jury to find damages based on the wrong measure."). Unique counters by arguing that the supreme court, in *Quigley v. Bennett*, "expressly rejected" Onder's waiver argument as it pertained to the submission of damages in the jury charge. *See* 227 S.W.3d 51, 54 (Tex. 2007). In *Quigley*, the supreme court noted that the appellate court held that Quigley's complaints about the submission of damages was waived by Quigley's failure to object in the trial court. *Id.* at 52. Without expressly addressing the court of appeals' waiver analysis, the supreme court examined the damage submission and concluded that the evidence supporting a portion of the jury's damages award was legally insufficient. *Id.* at 54-55. We disagree with Unique's contention that the supreme court "expressly rejected" Onder's waiver argument; however, considering the supreme court reversed the appeals courts' conclusion that the damages argument was waived, we will, out of an abundance of caution, reject Onder's waiver argument and address Unique's damages argument.

than an hour.

In *Quigley*, a geologist, Bennett, attempted to secure compensation from a leaseholder, Quigley, who decided to sell his interest in oil and gas leases. 227 S.W.3d at 52-53. Bennett assisted Quigley in marketing the leases to oil and natural gas companies, which included the creation of color graphs and maps of the leases. *Id.* at 52. Quigley purportedly told Bennett, "Don't worry Bennett, I'll take care of you." *Id.* The leases were eventually sold to Coastal Oil & Gas, with Quigley retaining an overriding royalty interest. *Id.* at 52-53. At that time, Bennett and Quigley briefly discussed Bennett's compensation, though not in depth. *Id.* at 53. Bennett's compensation was never put in writing. *Id.* at 52. When Quigley refused to pay Bennett, Bennett sued and argued that "geologists are usually compensated by receiving overriding royalty interests in the prospects they generate." *Id.* at 53. The supreme court determined that evidence of the value of the royalty interest to the oil and gas lease cannot be given any weight or effect and cannot be considered as evidence supporting the jury's verdict because the statute of frauds barred recovery. *Id.* at 54. The supreme court specifically noted that allowing the recovery of benefit-of-the bargain damages in a case where an agreement is not memorialized in writing circumvents the protections of the statute of frauds. *Id.* It is clear to this Court that the holding in *Quigley* as to damages is premised upon the applicability of the statute of frauds; thus, we conclude that the *Quigley* case is inapposite. *See id.*

The facts in *Breezevale* also pertain to an oral contract involving an interest in an oil and gas lease. 82 S.W.3d at 434-35. The court of appeals concluded that the statute of frauds applied to the oral agreement involving an oil and gas lease. *Id.* at 437. The court of appeals also rejected two exceptions to the statute of frauds—promissory estoppel and

28

partial performance—that the jury concluded were applicable. *Id.* at 439-41. In analyzing the partial performance exception to the statute of frauds, the court of appeals noted that "the doctrine of partial performance also requires that the party acting in reliance on the agreement suffer a substantial detriment for which there is no adequate remedy. . . . If Breezevale were successful in removing the oral agreement from the statute of frauds because of partial performance, Breezevale would be entitled to only reliance damages." *Id.* at 441. Like *Quigley*, we do not find *Breezevale* to be applicable in this matter. The dispute in *Breezevale* pertains to an agreement involving the conveyance of interests in real property, and the court's decision is premised upon a finding that the statute of frauds applies. Furthermore, the *Breezevale* court's analysis of damages hinges upon a finding that the statute of frauds and the partial performance exception applies. Here, the jury concluded, and we have affirmed, that the statute of frauds does not apply; thus, it was unnecessary to determine whether the partial performance exception to the statute of frauds applies. Moreover, the dispute in the instant case does not pertain to an interest in real estate, which, as noted earlier, requires that the agreement be in writing. Therefore, based on the foregoing, we conclude that the facts in *Breezevale* are distinguishable from the facts in this case.

The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure. *See Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App.–El Paso 2000, no pet.); *see also Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.–Corpus Christi 2006, pet. denied). Benefit-of-the-bargain damages are those "benefits [that] would have arisen only if" the alleged contract had been honored. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007). Benefit-of-the-

bargain damages compute "the difference between the value as represented and the value received." *Formosa Plastics Corp. USA*, 960 S.W.2d at 49 (citing *Arthur Andersen & Co. v. Perry Equip Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984)). "Under the benefit-of-the-bargain measure, lost profits on the bargain may be recovered if such damages are proved with reasonable certainty." *Id.* at 50.

In the instant case, it is undisputed that Onder's claim against Unique was for breach of contract, specifically breach of the "Independent Contractor and Commission Agreement." In support of his damages claim, Onder submitted several spreadsheets, which documented the names and payrolls of all of Onder's clients from February 2007 to the date of trial, July 2008. Onder multiplied each client's total payroll figure for each month by 1%, with the exception of one client whose payroll figure was multiplied by .65%, in accordance with paragraph five of the "Independent Contractor and Commission Agreement." A summation of the calculations yielded "the difference between the value as represented [in the "Independent Contractor and Commission Agreement"] and the value received" as $52,025.11. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 49; *see also Arthur Andersen & Co.*, 945 S.W.2d at 817; *Leyendecker & Assocs., Inc.*, 683 S.W.2d at 373. This summation is the exact amount of damages awarded by the jury for Onder's breach of contract claim. Therefore, based on the evidence contained in the record, we conclude that the jury was reasonable in arriving at its damages award. *See City of Keller*, 168 S.W.3d at 827-28; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705.

Because Unique's sufficiency arguments do not touch on any of the remaining elements of Onder's breach of contract cause of action, we need not address those

elements. *See* TEX. R. APP. P. 47.1, 47.4. Therefore, in reviewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury was reasonable in determining that Unique breached the "Independent Contractor and Commission Agreement" and that Onder sustained $52,025.11 in damages as a result of the breach. *See City of Keller*, 168 S.W.3d at 827-28; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705. Further, in reviewing the evidence in a neutral light, we cannot say that the jury's conclusions are manifestly unjust or against the great weight and preponderance of the evidence. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761-62; *see also Cain*, 709 S.W.2d at 176. Accordingly, we overrule Unique's third and fourth issues.

## IV. CONCLUSION

Having overruled all of Unique's issues on appeal and having concluded the record contains sufficient evidence to reform the trial court's judgment, we affirm as modified.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the 9th
day of December, 2010.

31