OTTO VEHLE & RESERVE LAW OFFI-
CERS ASSOCIATION, Appellants,

v.

Emery BRENNER, Individually and
d/b/a Brenner Printing
Company, Appellee.

No. 16136.

Court of Civil Appeals of Texas,
San Antonio.

Sept. 5, 1979.

Rehearing Denied Oct. 3, 1979.

H. David Peeples, Tinsman & Houser, Inc., San Antonio, for appellants.

Robert I. Kahn, Raymond E. Taylor, Phillip R. Spicer, Jr., San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a suit on an overdue account. Plaintiff Emery A. Brenner, individually and doing business as Brenner Printing Company, sued American Police Publications, Inc. (sometimes hereinafter referred to as APP); Leon Schumacker; and Otto Vehle on a sworn account. Vehle's answer consisted of a general denial and a sworn denial under Rule 185 of the Texas Rules of Civil Procedure. APP and Schumacker did not answer after due citation, and an interlocutory default judgment was taken against them. Brenner then filed a first amended petition which was the same as his original petition in most respects, except that it named "Otto Viehle [sic], d/b/a Re-

serve Law Officers Association" as a defendant in lieu of Otto Vehle as an individual defendant. Vehle's first amended answer consisted of a general denial and sworn pleas that, as to him, the account was not just or true in whole or in part, pursuant to Rule 185; that the action was barred by the Statute of Frauds; and that he was not liable in the capacity in which he was sued. There was no service of citation on Reserve Law Officers Association, and only Vehle was cited. American Police Publications, Inc., and Schumacker did not appear at trial.

Trial was to a jury, which, in answer to Special Issue No. 1, found that "Otto Vehle, doing business as Reserve Law Officers' Association," agreed in advance to pay for the work represented by the bill for $9,207.21. Special Issue Nos. 2, 3 and 4 pertained to attorney's fees, and the jury awarded the plaintiff $2,500, $2,500 and $2,000, respectively, as attorney's fees for legal services in preparation for and at trial; for appeal to the court of civil appeals, if necessary; and for appeal to the Supreme Court of Texas, if necessary. Reserve Law Officers Association (sometimes hereinafter referred to as the Association) filed an appeal by writ of error, and Vehle timely perfected his appeal to this court, both of which have been consolidated in the cause before us. Neither APP nor Schumacker perfected an appeal.

It is apparent from the record that a number of different entities were involved, or alleged to be involved, in this lawsuit. American Police Publications, Inc., a corporation, was engaged in the publishing business and was here involved in the publication of a magazine known as Reserve Law. As publisher it did not always do the actual printing of the magazine, however, and in the present dispute Brenner performed the printing on which this action is predicated. About sixty per cent of the magazine was comprised of advertisements sold by APP, from the sale of which APP kept the receipts, and the remaining forty per cent of the magazine's composition consisted of stories and articles that dealt generally with police work of various law enforcement or-

ganizations around the nation. APP was required to print the magazine (or to see that it was printed) and to pay for all the expenses in connection therewith; to sell the advertisements; and to pay for all expenses and costs incurred in connection with the publication of the magazine; Leon Schumacker was APP's agent for service and was active in the publishing activities previously outlined.

The Reserve Law Officers Association, a non-profit law enforcement association, consists of a large number of members who reside in forty-nine states and who pay yearly dues. The national headquarters are located in San Antonio. Some of the members volunteer to accompany regular law enforcement officers during the assigned tours of duty of such officers. Some Association members attend law enforcement programs where they receive various types of training. There is no common membership between APP and the Association. The Association members receive the magazine hereinbefore discussed as a benefit derived from their membership. The Association has at least five directors.

Otto Vehle is one of the directors of the Association and is also employed by the Association to travel over large areas of the United States meeting with and speaking to law enforcement groups, addressing state legislatures, and similar types of activities. For such work he received a salary from the Association.

The case is before us in the following status: Brenner has a default judgment against American Police Publications, Inc., and Leon Schumacker in the total sum of $12,276.28, which includes plaintiff's principal claim for $9,207.21, and attorney's fees of $3,069.07. Plaintiff was also awarded interest from date of judgment. Neither party in default has perfected an appeal.

Plaintiff also has a judgment against "Otto Vehle, d/b/a Reserve Law Officers Association," in the sum of $10,603.85, which includes the principal sum of $9,207.21, and prejudgment interest to the date of judgment in the amount of

$1,396.64; plus post-judgment interest at the rate of nine per cent per annum. Plaintiff was also awarded attorney's fees for trial work in the amount of $2,500; an additional $1,000, if the appeal is perfected to the court of civil appeals, and another $1,000, if the appeal is perfected to the Supreme Court of Texas.

By a number of points of error, Vehle on appeal asserts that (1) the trial court erred in submitting Special Issue No. 1[1] because (a) the issue assumes the existence of a disputed fact, i. e., whether Vehle was "doing business as Reserve Law Officers' Association"; (b) the issue commented on the weight of the evidence by telling the jury that Vehle was doing business as the Association; and (c) the issue was multifarious and submitted two separate ultimate fact questions; (2) the evidence is legally and factually insufficient to support a finding in the judgment that Vehle agreed to be liable individually or personally for the debt made the basis of this lawsuit; (3) the evidence is legally and factually insufficient to support a finding that Vehle was doing business as the Reserve Law Officers Association; (4) any cause of action is barred by the Statute of Frauds; and (5) portions of the jury argument made by counsel for Brenner were improper and harmful error.

The Association by three points of error asserts that the trial court erred in rendering judgment against it because (1) no citation was ever requested, issued, or served on the Association, nor did the Association ever make an appearance or waive service of citation; (2) any actual or constructive knowledge of the lawsuit by the Association did not cure the lack of citation and service, and the trial court did not, therefore, acquire jurisdiction over the Association; and (3) the trial court never acquired in personam jurisdiction over the Association.

1. Special Issue No. 1, as set forth in the charge to the jury, inquired:
    Do you find from a preponderance of the evidence that Otto Vehle, doing business as Reserve Law Officers' Association, agreed in advance to pay for the work represented by the $9,207.21 bill?

2. The requested special issues inquired, as follows:

■ We will first discuss appellants' contention that the trial court erred in submitting Special Issue No. 1 to the jury. Vehle denied throughout his testimony that he was Reserve Law Officers Association or that he was "doing business as" the Association, and he specifically denied under oath that he was liable in the capacity in which he was sued. He properly objected to Special Issue No. 1 on the grounds previously set forth and tendered two separate requested special issues in support of his position, which were refused.[2]

Submission of Vehle's requested special issues would not have unduly complicated or prolonged the case. Special Issue No. 1, as actually submitted to the jury, either assumed the existence of a disputed material fact, or the court found as a matter of law the existence of such a fact. The evidence before us does not support such a holding as a matter of law, and in actuality the evidence is to the contrary. As submitted, the jury was essentially told by the court that Vehle was "doing business as" Reserve Law Officers Association. At the least, it was a comment on the weight of the evidence. We have concluded that the presentation of the issue to the jury in the form in which it was submitted was error and harmful error. *City of Wichita Falls v. Gleghorn*, 531 S.W.2d 879 (Tex.Civ.App.— Eastland 1975), *writ ref'd n. r. e. per curiam*, 545 S.W.2d 446 (Tex.1976); *Cactus Drilling Co. v. Williams*, 525 S.W.2d 902 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); 3 R. McDonald, Texas Civil Practice §§ 12.03.2, 12.18.1 (rev. 1970). Vehle only asked that there be a separate special issue submitted for each ultimate issue.

■ We have further concluded that the jury's answer to Special Issue No. 1 is

    Requested Special Issue: Do you find from a preponderance of the evidence that Otto Vehle agreed in advance to pay for the work represented by the $9,207.21 bill?
    Requested Special Issue: Do you find from a preponderance of the evidence that when Otto Vehle made such agreement, if he did, he was doing business as the Reserve Law Officers Association of America?

against the great weight and preponderance of the evidence. Vehle consistently denied ever agreeing to pay for the debt here alleged. He testified positively that he never guaranteed the payment of such indebtedness, and that he never agreed to pay for the printing involved or to be responsible for it. He further testified that APP was to be wholly responsible for the printing of the Reserve Law magazine and that Brenner knew this. On the other hand, Brenner's testimony on this point is not entirely unequivocal. Generally, he testified that he had the "impression" that Vehle or the Association would be one of the responsible parties, but in this connection the testimony refers to Vehle's activities as a director of the Association. None of his testimony connects Vehle individually with responsibility for the debt.

Moreover, the documentary evidence supports Vehle's contentions. A large number of statements and invoices for printing jobs were introduced, most of them by Brenner, to establish the claim that is the subject of this suit. None of these statements or invoices were ever billed to Otto Vehle. Brenner's own account ledger cards, as introduced, do not list Vehle as the billed customer. There is nothing in any of the documentary evidence before us that suggests that Vehle was individually responsible for the bill. According to the testimony, Vehle did have a separate account with Brenner which consisted of small-scale printing jobs, and this account was paid in full and is not in dispute here. It is clear at least from the documentary evidence that Brenner recognized Vehle and the Association as different entities. There are no pleadings alleging that Vehle was an agent for the Association or that he was liable as an agent of the Association. The most that can be said of Brenner's evidence is that he was under the "impression" that Vehle was in some way responsible for the account, but even his own business records refute this impression.

We have also concluded that a portion of the appellee's closing argument to the jury was improper. During such argument appellee's counsel stated that Vehle had testified that there were some "twenty-five hundred members [of the Association]" and that the Association received $15 per member annually as dues; and that according to appellee's counsel's calculations this would amount to $375,000. At this time, Vehle's attorney objected that the financial net worth of the Association was not in issue and that it was improper to "wave big dollar signs in front of the jury," to which the court replied "Whatever the evidence shows you may discuss." Counsel for Brenner then stated that this was "a lot of money" and that "they talk about not being able to pay a $9,000 bill with that kind of money"; that "they talk about the good they do"; that "they buy [training] films and send them out free"; that "with $375,000 I can send a lot of free films to a lot of places and have money left over." At this time Vehle's attorney further objected that opposing counsel's figure of $375,000 in annual Association receipts was incorrect and pointed out that the true figure more closely approximated $37,500. The trial court sustained the objection and Brenner's attorney then stated "if that's right I apologize," but even in that event, $37,500 is "a substantial amount of money as far as the charity involved in this organization"; that "they want the charity to come from Mr. Brenner" and "they want him to donate his services for a magazine"; that "they talk about wanting to wash their hands of the publishing company," but that "they want to wash their hands of the responsibility, but they certainly want to dirty them in the benefits."

One of the vices of such argument is the attorney's continued use of the term "they." In actuality, Reserve Law Officers Association was not sued as a party nor was the Association ever served with citation in this cause. The argument was an undisguised request for a favorable verdict based upon the purported wealth of the Association. We are convinced that the argument was improper. Improper jury arguments, however, do not always necessitate reversal. The argument must be such that it was reasonably calculated to cause, and proba-

bly did cause the rendition of an improper verdict. The argument complained of here, compounded with other matters hereinbefore discussed, was in the nature of cumulative error, and, as such, was harmful error.

By one point of error Vehle further urges that the trial court erred in overruling his motion for judgment non obstante veredicto, for the reason that any agreement by him would have been an oral promise not enforceable under the Statute of Frauds. Vehle specially pleaded and invoked the provisions of the Statute of Frauds. Vehle urges that the alleged agreement is unenforceable under two provisions of the Texas Business and Commerce Code. He argues that it is undisputed that there is no writing of any kind signed by him and that Section 26.01(b)(2)[3] of the Code provides that a promise by one person to answer for the debt of another is unenforceable, unless it is in writing and is signed by the person to be charged with the promise. Vehle contends that the alleged agreement is also unenforceable under Section 2.201 of the Code which sets out the contractual requirements for the sale of goods for a price of $500 or more.

Brenner concedes that no contract was ever signed and that he is not relying on any written instrument. He asserts that he simply relied on the parties' statements and previous dealings with them to satisfy himself that their oral promise would be sufficient. Brenner testified that he relied on Vehle's promise to pay for the magazine and that in reliance on such verbal promise he changed his position to his detriment. Brenner further argues that if Vehle is allowed to escape liability because of the Statute of Frauds, he is using the statute to circumvent any liability for the printing obligation and that to enforce the Statute of Frauds here would produce a result that

is unfair, inequitable, and would amount to a virtual fraud.

■ There are certain defenses that could take this case out of the operation of the Statute of Frauds. The burden of pleading the affirmative defense of the Statute of Frauds was upon defendant under Rule 94, Texas Rules of Civil Procedure, with the burden of proof resting upon plaintiff to establish facts which would take the verbal contract out of the Statute of Frauds and to show that the oral promise was enforceable. *Cobb v. Johnson*, 101 Tex. 440, 108 S.W. 811 (1908); *Suniland Furniture Co. v. Pruitt*, 347 S.W.2d 835 (Tex.Civ. App.—Waco 1961, writ ref'd n. r. e.); *Perren v. Baker Hotel of Dallas*, 228 S.W.2d 311 (Tex.Civ.App.—Waco 1950, no writ).

■ Vehle properly pleaded the Statute of Frauds, but plaintiff failed to establish any applicable rules of defense that would take the case out of the operation of the Statute of Frauds. Some of his evidence is sufficient, however, to raise a fact issue as to some of these defenses. *See Gulf Liquid Fertilizer Co. v. Titus*, 163 Tex. 260, 354 S.W.2d 378 (1962). On balance, we believe that the interests of justice would best be served by a reversal and remand of this cause, rather than a reversal and rendition. *Scott v. Liebman*, 404 S.W.2d 288 (Tex. 1966).

We have concluded that the judgment as to "Otto Vehle, d/b/a Reserve Law Officers Association" must be reversed for a number of reasons, including the trial court's erroneous submission of Special Issue No. 1 in the form that it was presented to the jury; the factual insufficiency of the evidence supporting the jury's answer to Special Issue No. 1; and the impropriety of that portion of plaintiff's closing jury argument

---

**3.** Section 26.01 provides in part as follows:
  (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
    (1) in writing; and
    (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

  (b) Subsection (a) of this section applies to

  .    .    .    .    .

    (2) a promise by one person to answer for the debt, default, or miscarriage of another person.
  Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1968)

pertaining to the purported wealth of the Association.

We have also concluded that this judgment cannot stand as to Reserve Law Officers Association, since the Association was never named as a party defendant; was never served with citation; and did not make any appearance or waive such service. A judgment rendered against a party without citation or service upon him, or appearance by or for him, is a nullity. *Levy v. Roper*, 113 Tex. 356, 256 S.W. 251 (1923). A writ of error in the court of civil appeals is not a collateral proceeding, but a direct attack on the trial court's judgment. *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94 (Tex.1973). In a direct attack on a default judgment there is no presumption of service of citation, even if the judgment so recites. *McKanna v. Edgar*, 388 S.W.2d 927 (Tex. 1965); *Flynt v. City of Kingsville*, 125 Tex. 510, 82 S.W.2d 934 (1935). It is undisputed from the record that the Association is unincorporated and comprised of voluntary members. Service could have been had under provisions of Rule 106, Texas Rules of Civil Procedure, and under Articles 6133 and 6134, Texas Revised Civil Statutes. Plaintiff wholly failed to comply with the provisions of either the rule or these statutes, with respect to the Association.

Neither American Police Publications, Inc., nor Leon Shumacker, against both of which default judgment was taken below, perfected any appeal. The judgment is affirmed as to American Police Publications, Inc., and Leon Schumacker.

The judgment as to Otto Vehle, purported to be doing business as Reserve Law Officers Association, and as to Reserve Law Officers Association, is reversed and remanded to the trial court for a new trial.