NUMBER 13-09-00213-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

UNIQUE STAFF LEASING, LLC, AND
UNIQUE STAFF LEASING I, LTD.,                  Appellants,
v.
 
RICHARD ONDER,                                             Appellee.
                                                                                                                                      
 
On appeal from the County Court at Law No. 3
 of Nueces County, Texas.
                                                                                                                      

  MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Vela
 Memorandum Opinion by Chief Justice Valdez

          Appellants, Unique Staff Leasing, LLC, and Unique Staff Leasing I, Ltd. (collectively
“Unique”), challenge the jury’s verdict in a breach of contract case in favor of appellee,
Richard Onder. By four issues, Unique argues that: (1) the statute of frauds bars Onder’s
claims for breach of an oral agreement for future commissions; (2) the statute of frauds
bars Onder’s claim for breach of a written agreement to pay future commissions because
Onder could not establish that such a document existed and was signed by Unique, the
party charged under the agreement; (3) the evidence is legally and factually insufficient to
support Onder’s recovery for breach of contract; and (4) if any agreement between Unique
and Onder existed, Unique was excused from performing because Onder committed a
prior material breach of the purported contract. We affirm as modified.I. Background
A.       Agreements Between Onder and Unique
          This dispute centers on whether an “Independent Contractor and Commission
Agreement” that Onder and Unique purportedly executed in 2005 and an earlier oral
agreement to pay commissions are enforceable. Unique is a “professional employer
organization” that provides “staff leasing” and other employment services to businesses,
including “human resources, payroll, workers compensation, healthcare, pension plans,
safety [and] risk management, and claims services.” Unique is based in Corpus Christi,
Texas, but has branch offices in Houston, San Antonio, and McAllen, Texas. Bradford and
his wife own Unique; Ernest Wayne Judge served as Unique’s Regional Vice-President of
Sales; and Greg Maisal is Unique’s Vice-President of Sales and Marketing.
          In February 2002, Onder was hired by Unique as a salesman.


 Onder was tasked
with soliciting and bringing new company clients to Unique. Judge recommended hiring
Onder because the two knew each other. Onder was classified as an at-will employee of
Unique’s, and, on July 30, 2004, he signed an “At-Will Agreement,” which included a non-compete clause lasting for one year. In his pleadings, Onder asserted that he was
originally hired based on verbal agreements and that, on July 30, 2004, Unique required
that he signed the “At-Will Agreement.” Onder acknowledged at trial that most discussions
regarding his compensation were done verbally; in an affidavit, Onder noted that the
parties agreed he would be paid “a salary of about a thousand dollars per week, health
insurance and benefits, reimbursement for mileage and a one[-]percent commission for
sales. The commission was to be paid monthly in [an] amount . . . based upon a client’s
payroll for the previous month.”
          On December 31, 2004, Unique sent Onder a letter terminating his employment with
Unique. In this letter, Unique stated that:
You failed to meet the $6,000,000 gross payroll sales objectives outlines for
2004. You only met 8% of the stated goals. On October 5, 2004[,] you were
placed on a 90-day probationary review period and encouraged to meet a
revised $900,000 payroll goal by the end of December 2004. You were fully
aware of the communicated expectations and consequences related to low
production levels. Your failure to attain the stated sales objectives is
unacceptable and is the basis for your employment termination.

          Nevertheless, Unique apparently desired to maintain a working relationship with
Onder.


 As such, Bradford sent Onder an e-mail on January 3, 2005, with an unsigned
“Independent Contractor and Commission Agreement” attached. In his e-mail, Bradford
instructed Onder to read, sign, and return the document to Bradford so that Onder could
remain employed by Unique as an independent contractor. Onder printed the agreement,
signed it, and mailed it back to Bradford from a local UPS store. The record does not
contain a copy of the agreement signed by Onder, Bradford, or an authorized
representative of Unique; instead, an unsigned copy of the agreement is included in the
record. At trial, Bradford denied that the alleged signed version of the contract could have
been lost by Unique employees. Onder asserted that shortly thereafter, he was contacted
by Maisel for tax information so that Onder could get set up in Unique’s payroll system.
          The parties apparently operated under the “Independent Contractor and
Commission Agreement” for approximately two years, until February 7, 2007, when
Bradford sent Onder a letter terminating his services.


 In this letter, Bradford noted that:
Every year[,] we audit each client of Unique to find out how well we
are doing[.] [T]his audit includes how well we are delivering services to
include direct contact by our marketing representatives.
Greg Maisal phoned all active clients brought to Unique as a result
of your marketing efforts. Each client informed Greg that you did not contact
them during the calendar year 2006.
Paragraph five (5) of the Independent Contractor and Commission
Agreement states “that you will continue to be paid compensation for
accounts brought to Unique provided you actively market or service accounts
for Unique.”[


] This has not happened.
Effective March 1, 2007[,] we will no longer pay you commissions for
business brought to Unique as a result of you[r] marketing efforts.
(Emphasis in original.) Unique discontinued paying Onder commissions, even though
some of Onder’s clients continued to do business with Unique.
B.       Procedural Background
          Onder later filed an original petition alleging that, by refusing to continue paying him
commissions for his clients that remained with Unique, Unique had breached the
“Independent Contractor and Commission Agreement” and the oral agreements that Judge
and Onder entered into when Onder was first hired by Unique.


 Onder also asserted
claims for unjust enrichment and attorney’s fees and sought a declaration from the trial
court that he was entitled to the commissions at issue pursuant to the “Independent
Contractor and Commission Agreement.” Unique filed its original answer generally denying
Onder’s allegations and asserted counterclaims for attorney’s fees and a declaration that
Onder is no longer entitled to the payment of commissions under the “Independent
Contractor and Commission Agreement” considering he was terminated. Unique also
pleaded that the contract violated the statute of frauds and was, therefore, unenforceable.
          Thereafter, Unique filed a traditional motion for partial summary judgment, arguing
that: (1) the complained-of contract was governed by the statute of frauds; (2) the
complained-of contract did not satisfy the statute of frauds; and (3) Onder’s breach of
contract claim failed as a matter of law. After a hearing, the trial court denied Unique’s
motion for summary judgment.
          In early September 2008, trial commended in this matter. After several days of
testimony, the jury returned a verdict favorable to Onder. Specifically, the jury concluded
that: (1) Onder and Unique agreed that Onder would continue to be paid commissions (the
agreement allegedly entered into by Judge and Onder when Onder was first hired), even
after his employment with Unique was terminated; (2) Unique failed to comply with the
commissions agreement; (3) Unique’s failure to comply with the oral commissions
agreement was not excused; (4) the parties intended to conduct business electronically,
and both parties agreed to be bound by the “Independent Contractor and Commission
Agreement”; (5) Unique failed to comply with the “Independent Contractor and Commission
Agreement”; and (6) Unique’s failure to comply was not excused. Given its liability findings,
the jury awarded Onder $52,025.11 in lost commissions.


 The trial court signed its final
judgment adopting the jury’s findings on January 26, 2009, and awarded Onder an
additional $3,117.96 in pre-judgment interest, $21,750 in attorney’s fees for trial
preparation, $15,000 in attorney’s fees for an appeal to this Court, attorney’s fees for an
appeal to the supreme court, and interest in the amount of 5% per annum.
          Unique subsequently filed a motion for new trial, which was overruled by operation
of law. See Tex. R. Civ. P. 329b(c). This appeal followed. 
II. The Statute of Frauds
          In their first and second issues, Unique argues that the “Independent Contractor and
Commission Agreement” and the oral agreements between Judge and Onder violate the
statute of frauds and are therefore unenforceable because the agreements could not be
performed within one year of their making and were not signed by the party charged with
the agreement—Unique. Unique also contends that the parties did not intend to conduct
business electronically, and the attachment of the unsigned contract to an e-mail in which
Bradford typed his name does not constitute an electronic signature or satisfy the
requirements for an enforceable electronic transaction. Onder counters by arguing that the
contract is not subject to the statute of frauds because the agreement could be performed
within one year of its making, in accordance with its own terms.


 Onder further argues that
the contract was electronically signed by Bradford and that Onder accepted Unique’s offer
of employment as an independent contractor by signing the agreement and returning a
hard copy to Unique by mail, as Unique requested. In the alternative, Onder asserts that
if the contract falls within the statute of frauds, Unique partly performed under the contract
and cannot accept the benefits of Onder’s performance “and now urge that the contract
is not enforceable pursuant to the [s]tatute of [f]rauds.”
A.       Applicable Law
          The statute of frauds exists to prevent fraud and perjury in certain kinds of
transactions by requiring agreements to be set out in writing and signed by the parties. 
Haase v. Glazner, 62 S.W.3d 795, 799 (Tex. 2001); Barrand, Inc. v. Whataburger, Inc., 214
S.W.3d 122, 142 (Tex. App.–Corpus Christi 2006, pet. denied). It bars enforcement of
contracts that cannot be performed within one year unless the contract is in writing and
signed by the party to be charged with the promise. Tex. Bus. & Com. Code Ann. §
26.01(a), (b)(6) (Vernon 2009); see Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483,
489 (Tex. 1991), overruled on other grounds by In re United Servs. Auto. Ass’n, 307
S.W.3d 299 (Tex. 2010); see also Garrod Invs., Inc. v. Schlegel, 139 S.W.3d 759, 763
(Tex. App.–Corpus Christi 2004, no pet.). Generally, whether a contract falls within the
statute of frauds is a question of law. Bratcher v. Dozier, 162 Tex. 319, 346 S.W.2d 795,
796 (1961); Lathem v. Kruse, 290 S.W.3d 922, 926 (Tex. App.–Dallas 2009, no pet.);
Beverick v. Koch Power, Inc., 186 S.W.3d 145, 149 (Tex. App.–Houston [1st Dist.] 2005,
pet. denied); Choi v. McKenzie, 975 S.W.2d 740, 743 (Tex. App.–Corpus Christi 1998, pet.
denied). We review questions of law de novo. El Paso Natural Gas Co. v. Minco Oil &
Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999); Rittmer v. Garza, 65 S.W.3d 718, 722 (Tex.
App.–Houston [14th Dist.] 2001, no pet.). 
          The statute of frauds in an affirmative defense, which is waived if not pleaded. See
Tex. R. Civ. P. 94; see also Phillips v. Phillips, 820 S.W.2d 785, 791 (Tex. 1991); Garrod
Invs., Inc., 139 S.W.3d at 763. The party pleading the statute of frauds bears the initial
burden in establishing its applicability. See Otto Vehle & Reserve Law Officers Ass’n v.
Brenner, 590 S.W.2d 147, 152 (Tex. Civ. App.–San Antonio 1979, no writ). Once it is
established that the statute of frauds applies, the burden of proof shifts to the plaintiff to
establish facts which would take the oral contract out of the statute, thus allowing the oral
promise to be enforceable. See id. “Whether the circumstances of a particular case fall
within an exception to the statute of frauds is generally a question of fact.” Adams v.
Petrade Int’l, Inc., 754 S.W.2d 696, 705 (Tex. App.–Houston [1st Dist.] 1988, writ denied);
see Brenner, 590 S.W.2d at 152 (stating that a plaintiff must establish facts which take an
oral contract outside the statute of frauds). The party seeking to benefit from an exception
to the statute of frauds bears the burden of pleading and proving an exception. Mann v.
NCNB Tex. Nat’l Bank, 854 S.W.2d 664, 668 (Tex. App.–Dallas 1992, no writ). In addition,
unless the evidence conclusively establishes an exception, a party must secure a favorable
jury finding on the exception. Tex. R. Civ. P. 279; Barbouti v. Munden, 866 S.W.2d 288,
295 (Tex. App.–Houston [14th Dist.] 1993, writ denied), overruled on other grounds by
Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41 (Tex.
1998). 
          To satisfy the statute of frauds, there must be a written memorandum which “must
be complete within itself in every material detail and must contain all the essential elements
of the agreement, so that the contract can be ascertained from the writing without resorting
to oral testimony.” Garrod Invs., Inc., 139 S.W.3d at 763 (citing Cohen v. McCutchin, 565
S.W.2d 230, 232 (Tex. 1978)); see Frost Nat’l Bank v. Burge, 29 S.W.3d 580, 594 (Tex.
App.–Houston [14th Dist.] 2000, no pet.); Bachman Ctr. Corp. v. Sale, 359 S.W.2d 290,
294 (Tex. Civ. App.–Dallas 1962, writ ref’d n.r.e.) (“[T]he essential elements of a contract
required to be in writing may never be supplied by parol [evidence].”).
B.       The “Independent Contractor and Commission Agreement” and the
Applicability of the Statute of Frauds

          Here, Unique timely pleaded its statute of frauds affirmative defense; thus, it bore the
initial burden of proving the applicability of the statute of frauds to this dispute. See Tex. R.
Civ. P. 94; Phillips, 820 S.W.2d at 791; see also Brenner, 590 S.W.2d at 152. Among its
arguments on appeal, Unique contends that the agreement is not enforceable because a
copy of the contract signed by Unique and Onder, the parties to the contract, was never
produced at trial. This contention is premised on the assumption that the statute of frauds
applies and that the agreement needed to be in writing and signed by the parties. See
Haase, 62 S.W.3d at 799; see also Barrand, Inc., 214 S.W.3d at 142. 
          The record contains a copy of the “Independent Contractor and Commission
Agreement,” which was not signed by either party. Onder testified that this contract is the
agreement between Unique and him regarding his independent-contractor status and
commissions. The record also contains an e-mail sent from Bradford to Onder with the
complained-of contract attached. In this email, Bradford stated the following: “Please read
and sigh [sic]. If you have any questions[,] do not hesitate calling. Garry.” Onder replied
to Bradford’s e-mail with an e-mail of his own. The following are the contents of Onder’s
e-mail response: 
Dear Garry, Thank You so much for e[-]mailing me the contract[.] I will be
reviewing it to sign in the next day or two. One correction I immediately
caught, was my zip code needs to be corrected. It is 78231. Will contact you
shortly. Thanks again for this opportunity[.] Richard Onder. 
Onder testified that he signed the contract and mailed it back to Unique, as was requested. 
In deposition testimony, Bradford denied ever receiving the signed contract from Onder and
denied that the document may have been misplaced or lost. However, in his trial testimony,
Bradford alludes to the “Independent Contractor and Commission Agreement” as the
contract the parties operated under from January 3, 2005 to February 7, 2007. 
Furthermore, in the February 7, 2007 termination letter that he drafted, Bradford recognized
the existence of the contract when he explicitly referenced paragraph five of the contract
as the grounds for terminating Onder. Nevertheless, whether Onder signed the contract
and whether Unique received the contract were fact issues for the jury to determine, and
with its verdict, the jury concluded that Onder signed the contract; Onder mailed it to
Unique; Unique received the contract; and Unique and Onder accepted the terms of the
contract and began performing, thus making the contract enforceable.
          Despite the jury’s conclusions, Unique argues that the contract is unenforceable
because Onder and a representative from Unique did not sign the contract. Even assuming
that the statute of frauds applies, we hold, based on the record before us, that a reasonable
juror could have concluded that Onder signed the contract and mailed it back to Unique, as
was requested, and that Unique accepted the contract by performing in accordance with the
contractual terms for approximately two years as if Onder had actually accepted the terms
of the contract by signing. See Ingram v. Deere, 288 S.W.3d 886, 893 (Tex. 2009) (stating
that, we credit evidence favorable to the jury’s verdict if a reasonable juror could have so
found and disregard contrary evidence unless a reasonable juror could not have so
found—the standard for legal sufficiency); Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,
271 S.W.3d 238, 248 (Tex. 2008) (same); City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005) (same). Furthermore, Bradford admitted in his testimony that he believed he
had an enforceable contract with Onder. Texas courts have held that “[a] contract
containing mutual obligation that has been reduced to writing and signed by one of the
parties can be accepted by the non-signing party by their conduct, thus making it a binding
agreement on both parties.” MG Bldg. Materials, Inc., v. Moses Lopez Custom Homes, Inc.,
179 S.W.3d 51, 62 (Tex. App.–San Antonio 2005, pet. denied) (citing Hearthshire
Braeswood Plaza Ltd. P’ship v. Billy Kelly Co., 849 S.W.2d 380, 392 (Tex. App.–Houston
[14th Dist.] 1993, writ denied); Velasquez v. Schuehle, 562 S.W.2d 1, 3 (Tex. Civ. App.–San
Antonio 1977, no writ) (“To constitute a valid contract in writing[,] it is not necessary that the
agreement be signed by both parties, for i[f] one party signs, the other may accept by his
acts, conduct, or acquiescence in the terms of the contract.”)). Based on the evidence, we
reject Unique’s argument that the contract is unenforceable because the record is devoid
of a copy of the contract signed by Unique. See MG Bldg. Materials, Inc., 179 S.W.3d at
62; Billy Kelly Co., 849 S.W.2d at 392; Velasquez, 562 S.W.2d at 3.
          We further reject Unique’s contention that the contract is unenforceable because it
cannot be completed within one year. In arriving at this conclusion, we must look to the
specific language contained in the agreement. The agreement expressly provides that the
term of the agreement “is for one year commencing on the effective date of this
Agreement.” The agreement further provides that it: 
shall automatically renew for additional one[-]year terms unless either party
gives sixty (60) days written notice to the other party before the expiration of
any term of their desire to terminate this Agreement for cause. Richard Onder
shall be entitled to continue to receive the total compensation (as defined
below) from Unique for customers that Richard Onder delivered to Unique
during the term of this Agreement or any renewed term for so long as Richard
Onder complies with paragraph five.
Paragraph five of the agreement states, in relevant part, that: 
Richard Onder shall be paid between .50%-1.00% of each customers[’] gross
payroll on business booked based on contract quotes from client
companies. . . .  The sales commission shall be paid monthly, no later than
ten (10) days following the end of the month in which the Sales Commission
was earned. Richard Onder will continue to be paid compensation for
accounts brought to Unique provided he actively markets or services
prospective accounts for Unique.
          The plain language of the agreement clearly states that the term of the agreement
is for one year, meaning that it could be performed, by its own terms, within one year. “If
a contract can, from the terms of the agreement, be performed within one year[,] it is not
within the [s]tatute of [f]rauds.” Miller v. Riata Cadillac Co., 517 S.W.2d 773, 775 (Tex.
1974); see Niday v. Niday, 643 S.W.2d 919, 920 (Tex. 1982) (“[W]here the agreement,
either by its terms or by the nature of the required acts, cannot be completed within one
year, it falls within the statute [of frauds] and must therefore be in writing.”) (emphasis in
original); Hall v. Hall, 308 S.W.2d 12, 14 (Tex. 1957) (stating that a contract does not fall
within the statute of frauds unless it appears “from the terms of the contract that
performance cannot be completed within one year”); see also Chevalier v. Lane’s, 147 Tex.
106, 213 S.W.2d 530, 532 (1948) (noting that the statute of frauds does not apply “where
the agreement may, by its own terms, be fully performed within the year”). The supreme
court also stated that “where [a] contract omits the performance terms, duration may
properly be implied from extrinsic evidence. If that evidence conclusively proves that the
contract cannot be completed within one year . . . the . . . contract violated the [s]tatute of
[f]rauds as a matter of law.” Niday, 643 S.W.2d at 920 (citing Krueger v. Young, 406
S.W.2d 751, 755-56 (Tex. Civ. App.–Eastland 1966, writ ref’d n.r.e.)). Here, the contract
has specific performance terms that can be completed within one year of its making; thus,
we conclude that the “Independent Contractor and Commission Agreement” does not fall
within the statute of frauds.


 
          Unique has repeatedly argued that the term of the agreement exceeded one year in
duration, since the purported effective date of the agreement was January 3, 2005, and the
agreement was finally terminated by Unique on February 7, 2007. In support of this
contention, Unique relies heavily on this Court’s decision in Barrand. We do not find
Unique’s argument to be persuasive, and we find the Barrand case to be distinguishable
from the facts in this case. 
          The dispute in Barrand pertained to a settlement agreement between Whataburger
and various franchisees, including Barrand. See 214 S.W.3d at 127. The settlement
agreement arose from a prior lawsuit brought by several franchisees regarding an “improper
rebate program between Whataburger and the suppliers that sell goods to Whataburger’s
franchisees.” Id. The settlement agreement dictated that franchisees receive varying
amounts of cash reimbursements and be allowed to execute new franchise agreements. 
Id. The new franchise agreements, otherwise referred to as modified franchise agreements,
granted the franchisees the right to operate restaurants under the Whataburger system for
an initial ten-year period and granted the franchisees the right to renew their franchise
agreements for two successive five-year terms. Id. The language included in the
settlement agreement became the basis for the lawsuit filed by Whataburger. Id. Barrand
filed counterclaims against Whataburger, which included a claim involving a purported
contractual right to develop new restaurants. Id. at 140-42. Barrand alleged that it entered
into various oral agreements in 1994 and 1998, with Whataburger to develop new
restaurants. Whataburger, in an answer to Barrand’s counterclaims, argued that the oral
agreements were unenforceable under the statute of frauds because they could not be
completed within one year. Id. at 141-42. It was undisputed that “the agreement[s] could
not be performed within one year because [they] entailed a ‘permanent’ obligation for
Whataburger to allow new store development.” Id. at 141. In response to Barrand’s
counterclaims, Whataburger filed a motion for summary judgment, which was granted by
the trial court. Id. at 127-28. On appeal, Barrand claimed that summary judgment was
improper because Whataburger “failed to produce any evidence to establish that the
agreement[s] could not be performed within one year.” Id. at 141. We noted that the first
purported oral agreement between Barrand and Whataburger took place in 1994, the
alleged breach of the agreement took place in 2001, and the oral agreement was related
to the ten-year settlement agreement and concluded that the oral agreements between
Barrand and Whataburger fell within the statute of frauds. Id. at 141-42. 
          We find the facts in Barrand to be distinguishable from the present case because
Barrand admitted that Whataburger’s obligations to allow franchisees to develop new
restaurants were “permanent” and “the agreement could not be performed within one year.” 
Id. at 141. Here, the specific language of the Independent Contractor and Commission
Agreement provides for one-year terms with automatic renewals for additional one-year
terms, unless an intent to terminate is timely expressed in writing. Thus, the complained-of
contract can be completed within one year. 
          Unique argues that the parties’ testimony at trial demonstrates that they intended for
the contract to last several years, as long as clients stayed with Unique. Unique directs us
to testimony that, on average, clients stayed with Unique for five years. This evidence,
however, is irrelevant given that the language of the contract governs and the contract is
the embodiment of the parties’ intent. Unique’s attempt to use parol evidence, i.e. the
parties’ testimony, to contradict the unambiguous terms of the contract is impermissible. 
See Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995) (stating
that, under the parol evidence rule, extrinsic evidence is ordinarily not admissible to add to,
vary, or contradict the terms of a written contract that is clear on its face); see also Villarreal
v. Art Inst. of Houston, Inc., 20 S.W.3d 792, 796-97 (Tex. App.–Corpus Christi 2000, no
pet.) (same). 
          Furthermore, Unique has not cited, nor are we aware of, binding authority stating that
we ignore the express terms of the purported agreement and, instead, focus on how many
renewal terms were executed or how long the agreement actually remained in force. See
Hampton v. Lum, 544 S.W.2d 839, 841 (Tex. Civ. App.–Texarkana 1976, no writ)
(concluding that the “term” in a written lease for the conveyance of real property has a
technical meaning and that the term in the lease was for two years when the language of
the lease provided that the original lease term was for one year with an automatic renewal
option of one year)


; see also Sullivan v. Leor Energy LLC, 600 F.3d 542, 547 (5th Cir.
2010) (pertaining to an employment contract and stating that “under Texas law, a contract
for a stated term longer than one year is not taken out of the statute of frauds when there
is a mere possibility of termination within one year due to contingent events set forth in the
contract, including termination by a party. . . . [T]he possibility that a party to a contract
might die less than a year after a contract with a term of more than one year was
consummated does not take the agreement out of the statute of frauds”); Gulf Coast Mar.
Assocs. v. C-Port Galveston, Civil Action No. G-04-308, 2005 U.S. Dist. LEXIS 27950, at
*5 (S.D. Tex. Nov. 8, 2005) (involving a written lease for real estate). Based on the
foregoing, we conclude that the “Independent Contractor and Commission Agreement”
could have been performed within one year and, thus, was not subject to the statute of
frauds.


 See Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(6); see also Schroeder, 813
S.W.2d at 489; Garrod Invs., Inc., 139 S.W.3d at 763. Accordingly, we overrule Unique’s
first two issues.
III. Legal and Factual Sufficiency
          By their third and fourth issues, Unique and Bradford assert that the evidence
supporting the jury’s verdict is legally and factually insufficient. We disagree. 
a.       Standard of Review and Applicable Law
          An appellate court will sustain a legal sufficiency or “no-evidence” challenge if the
record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of
law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence
establishes conclusively the opposite of the vital fact. City of Keller, 168 S.W.3d at 810. 
In conducting a legal sufficiency review, we must consider the evidence in the light most
favorable to the jury’s verdict and indulge every reasonable inference that supports it. Id.
at 821-22; Harris County v. Vernagallo, 181 S.W.3d 17, 24 (Tex. App.–Houston [14th Dist.]
2005, no pet.); Prairie View A&M Univ. v. Brooks, 180 S.W.3d 694, 705 (Tex. App.–Houston
[14th Dist.] 2005, no pet.). The evidence is legally sufficient if it would enable reasonable
and fair-minded people to reach the decision under review. See City of Keller, 168 S.W.3d
at 827-28; Vernagallo, 181 S.W.3d at 24; Brooks, 180 S.W.3d at 705. We must credit
favorable evidence if a reasonable trier of fact could have so found, and disregard contrary
evidence unless a reasonable trier of fact could not have so found. Ingram, 288 S.W.3d at
893; Hogue, 271 S.W.3d at 248; City of Keller, 168 S.W.3d at 827. The trier of fact is the
sole judge of the witnesses’ credibility and the weight to be given their testimony. City of
Keller, 168 S.W.3d at 819; Vernagallo, 181 S.W.3d at 24; Brooks, 180 S.W.3d at 705. 
Moreover, in reviewing the sufficiency of the evidence, we may not substitute our own
judgment for that of the trier of fact, even if we would reach a different answer on the
evidence. See Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998); Scoggins
Constr. Co. v. Dealers Elec. Supply Co., No. 13-06-00368-CV, 2009 Tex. App. LEXIS 8171,
at *9 (Tex. App.–Corpus Christi Oct. 22, 2009, pet. denied) (mem. op. on remand).
          In reviewing the factual sufficiency of the evidence, we consider and weigh all of the
evidence in the case and set aside the verdict and remand the cause for a new trial, if we
conclude, viewing the evidence in a neutral light, that the verdict is so against the great
weight and preponderance of the evidence as to be manifestly unjust, regardless of whether
the record contains some “evidence of probative force” in support of the verdict. See
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761-62 (Tex. 2003); see also Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The evidence supporting the
verdict is to be weighed along with the other evidence in the case, including that which is
contrary to the verdict. Jackson, 116 S.W.3d at 761-62. If we determine that the evidence
supporting the jury’s verdict is not supported by factually sufficient evidence, we must “detail
the evidence relevant to the issue” and “state in what regard the contrary evidence greatly
outweighs the evidence in support of the verdict.” Dow Chem Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001) (per curiam).
          In order for a contract to be enforceable, there must be an offer, an acceptance in
strict compliance with the terms of the offer, a meeting of the minds, each party’s consent
to the terms, and execution and delivery of the contract with the intent that it be mutual and
binding. See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115
S.W.3d 287, 291 (Tex. App.–Corpus Christi 2003, pet. denied); see also Johnson v.
Aransas County Navigation Dist., No. 1, No. 13-06-601-CV, 2008 Tex. App. LEXIS 7324,
at *8 (Tex. App.–Corpus Christi Oct. 2, 2008, pet. denied) (mem. op.). All of these elements
must be met in order for the contract to be enforceable. See Brownsville Barge & Crane,
Inc., 115 S.W.3d at 291.
          On the other hand, to recover for breach of contract, a plaintiff must prove: (1) the
existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3)
breach by the defendant; and (4) harm to the plaintiff as a result of the breach. See Adams
v. H&H Meat Prods., Inc., 41 S.W.3d 762, 771 (Tex. App.–Corpus Christi 2001, no pet.);
see also Beckham Resources, Inc. v. Mantle Resources, L.L.C., No. 13-09-00083-CV, 2010
Tex. App. LEXIS 1323, at *22 (Tex. App.–Corpus Christi Feb. 25, 2010, pet. filed). 
b.       Discussion
          In the instant case, the jury concluded that Unique breached the “Independent
Contractor and Commission Agreement” by discontinuing the payment of commissions to
Onder and that Unique’s breach was not excused. The jury did not conclude that Onder
breached the agreement. However, on appeal, Unique argues that the evidence
establishes that: (1) Unique did not agree to pay Onder commissions to not service the
clients or, in other words, a valid, enforceable contract did not exist; (2) Unique did not
breach any agreements with Onder; (3) the complained-of breaches, if any, were excused
or justified by good cause; and (4) Onder failed to introduce legally sufficient evidence of
recoverable damages. The majority of Unique’s sufficiency arguments are premised on the
allegation that Onder did not service his clients in compliance with the “Independent
Contractor and Commission Agreement”; therefore, Unique was justified in terminating the
contract. We will analyze these contentions first. 
          1.       The Purported Material Breach of the Contract by Onder
           In order to analyze Unique’s contentions regarding Onder’s purported breach of
contract, we must examine the contents of the agreement. Bradford’s February 7, 2007
termination letter to Onder stated that Onder failed to comply with paragraph 5 of the
“Independent Contractor and Commission Agreement.” As noted earlier, paragraph 5 of
the agreement provides that:
Richard Onder shall be paid between .50%-1.00% of each customers[’] gross
payroll on business booked based on contract quotes from client
companies. . . .  The sales commission shall be paid monthly, no later than
ten (10) days following the end of the month in which the Sales Commission
was earned. Richard Onder will continue to be paid compensation for
accounts brought to Unique provided he actively markets or services
prospective accounts for Unique.
(Emphasis added.) Unique argues that the language of the contract directing Onder to
service “prospective accounts” means that Onder was required by contract to actively
service all clients he brought to Unique; ostensibly, Unique argues that the language of the
contract is ambiguous and seeks to explain the intent of the parties to the contract by using
parol evidence—the testimony of Bradford and Judge. To properly analyze this argument,
we must resort to the rules of contract interpretation in order to determine whether Onder
breached the agreement and, thus, committed a prior material breach which relieved
Unique of performing under the contract. 
          The rules of contract construction are well-established. See Am. Mfrs. Mut. Ins. Co.
v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003) (“An ambiguity exists only if the contract
language is susceptible to two or more reasonable interpretations.”). Conflicting
interpretations of a contract, and even unclear or uncertain language, do not necessarily
mean a contract is ambiguous. See Kurtz v. Jackson, 859 S.W.2d 609, 611 (Tex.
App.–Houston [1st Dist.] 1993, no writ); see also Shields v. Delta Lake Irrigation Dist., No.
13-01-622-CV, 2006 Tex. App. LEXIS 4082, at *14 (Tex. App.–Corpus Christi May 11,
2006, pet. denied) (mem. op.). “The language in an agreement is to be given its plain
grammatical meaning unless to do so would defeat the parties’ intent.” DeWitt County Elec.
Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). Further, “[w]hen a contract is not
ambiguous, the construction of the written instrument is a question of law for the court . . . .” 
MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999); see City
of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). 
          Generally, where an unambiguous writing has been entered into between the parties,
courts will give effect to the intention of the parties as expressed or as apparent in the
writing. See Spooner Addition Water Co., 432 S.W.2d at 518; see also Shields, 2006 Tex.
App. LEXIS 4082, at *30. Usually, the instrument alone will be deemed to express the
intentions of the parties for it is the objective, not subjective, intent that controls. See
Spooner Addition Water Co., 432 S.W.2d at 518; see also Shields, 2006 Tex. App. LEXIS
4082, at **30-31. Our primary concern interpreting the “Independent Contractor and
Commission Agreement” is to give effect to the intentions of the parties as expressed in the
instrument. See R & P Enter. v. Laguarta, Gavrel & Kirk, 596 S.W.2d 517, 518 (Tex. 1980);
see also Shields, 2006 Tex. App. LEXIS 4082, at * 31.
          After reviewing the “Independent Contractor and Commission Agreement,” we cannot
say that the contractual language is ambiguous. As noted earlier, the contract was
promulgated by Unique and sent to Onder for acceptance. See AT&T Corp. v. Rylander,
2 S.W.3d 546, 559 (Tex. App.–Austin 1999, pet. denied) (“As a general rule, writings are
construed strictly against the author and in a manner so as to reach a reasonable result that
is consistent with the intent of the parties.”); see also Lara Energy, Inc. v. Yuma Petroleum
Co., No. 13-98-435-CV, 2000 Tex. App. LEXIS 1942, at *9 (Tex. App.–Corpus Christi Mar.
23, 2000, pet. denied) (not designated for publication) (“The rule of construction urged by
Lara in the present appeal, i.e., that a contract is construed against its drafter, does not
apply unless the contract is found to be ambiguous.”) (citing Rylander, 2 S.W.3d at 558-59;
GTE Mobilnet of S. Tex. Ltd. P’ship v. Telecell Cellular, Inc., 955 S.W.2d 286, 290 (Tex.
App.–Houston [1st Dist.] 1997, writ denied); Kincaid v. Gulf Oil Corp., 675 S.W.2d 250, 256
(Tex. App.–San Antonio 1984, writ ref’d n.r.e.)). The specific language of the contract only
requires Onder to service “prospective accounts.” Nowhere in the contract is language
requiring Onder to service all clients he brought to Unique.


 
          Used in its ordinary context, the term “prospective” is defined as “[a]nticipated or
expected; likely to come about.” Black’s Law Dictionary 1342 (9th ed. 2009); see
Merriam Webster’s Collegiate Dictionary 937 (10th ed. 1996) (defining “prospective” as
“likely to come about” or “likely to be or become”). Further, Bradford testified via deposition
that “[p]rospective accounts would be if he’s [Onder] out marketing to bring on new
business” and that “[a]n active account would be one that was brought to us by either an
independent contractor or by an employee of Unique.” Therefore, based on the contract
and the ordinary meaning of the term “prospective,” we disagree with Unique’s interpretation
that the specific language of the contract required Onder to service all of the clients he
brought to Unique. Instead, the contract only required Onder to service those clients that
were “anticipated,” “expected,” or likely to become clients of Unique.


 See Black’s Law
Dictionary at 1342; see also Merriam Webster’s Collegiate Dictionary at 937. Given
this conclusion, we must now determine whether the evidence supporting the jury’s implicit
conclusion that Onder did not breach the “Independent Contractor and Commission
Agreement” is sufficient.
          Regarding Onder’s purported breach of the contract, Unique argues they were
entitled to terminate the purported contract because Onder committed the first material
breach by failing to “service his clients.” We disagree. 
          “In the standard contract dispute, one party cancels the contract or refuses to pay
due to alleged breaches by the other; in such circumstances, jurors will often find both
parties failed to comply with the contract . . . unless instructed that they must decide who
committed the first material breach.” Mustang Pipeline Co. v. Driver Pipeline Co., 134
S.W.3d 195, 2000 (Tex. 2004) (citing Mead v. Johnson Group, Inc., 615 S.W.2d 685, 689
(Tex. 1981) (stating that default by one contracting party excuses performance by the
other)). Further, “[i]t is a fundamental principal of contract law that when one party commits
a material breach of that contract, the other party is discharged or excused from further
performance.” Mustang Pipeline Co., 134 S.W.3d at 196.
          Here, the jury was not specifically asked whether Onder breached the purported
contract. Rather, the jury was asked the following: “Was Unique Staff Leasing’s failure to
comply with the agreement, if any, excused? Failure to comply by Unique Staff [L]easing
is excused by Richard Onder’s failure to comply, if any, with a material obligation of the
same agreement.” To this question, the jury concluded that Unique’s failure to comply with
the agreement was not excused; thus, the jury implicitly determined that Onder did not
breach the purported contract, much less commit the first material breach of the contract. 
Unique argues that the jury’s decision is contrary to the evidence in the record because
Onder admitted that he did not call his clients on a monthly basis and some of Onder’s
clients acknowledged that they had not heard from him in some time. Onder explained that
he did not contact most of his clients regularly because he was not instructed that he had
to, and he was preoccupied with a divorce. Just prior to Onder’s termination, Maisel
contacted all of Onder’s clients to see if Onder had recently contacted them. Maisel made
notes of the contents of his calls to Onder’s clients, and these notes were entered into
evidence. Maisel’s notes indicated that: (1) several of Onder’s clients did not respond to
Maisel’s calls and messages; and (2) a few of Onder’s clients had not heard from him in a
long time. Maisel admitted in his testimony, however, that a couple of Onder’s clients had
in fact been contacted by Onder. In his testimony, Onder stated that the contract provided
that he needed only contact and service “prospective clients” rather than clients already
doing business with Unique and that Unique had an excellent customer service staff that
regularly called and assisted clients that Onder had already brought to Unique. Judge,
Bradford, and Maisel each tried to contradict Onder’s testimony by noting that Bradford
regularly conducted meetings with independent contractors and encouraged the
independent contractors to regularly contact their clients. See David J. Sacks, P.C. v.
Haden, 266 S.W.3d 447, 450 (Tex. 2008) (holding that an unambiguous contract will be
enforced as written, and parol evidence will not be received for the purpose of creating an
ambiguity or to give the contract a meaning different from that which its language imparts);
see also Netrana, L.L.C. v. TXU Bus. Servs. Co., No. 13-08-00264-CV, 2009 Tex. App.
LEXIS 8754, at *14 (Tex. App.–Corpus Christi Nov. 12, 2009, no pet.) (mem. op.) (same). 
However, neither Judge, Bradford, nor Maisel informed Onder exactly how often he should
contact the clients. The record reflects that Onder brought clients to Unique during the
relevant time period—January 2005 to February 2007—and that Unique compensated
Onder according to the compensation provision of the “Independent Contractor and
Commission Agreement.”
          In light of our earlier analysis of the language of the contract, specifically the term
“prospective,” we cannot say that a reasonable fact-finder could reject Onder’s testimony
and the unambiguous language of the contract in light of Bradford, Judge, and Maisel’s
testimony or Maisel’s notes. Clearly, the contract only required Onder to service
“prospective accounts,” not the clients that he had already secured for Unique. Unique’s
customer service department was designed to service the needs of existing clients. 
Therefore, based on the unambiguous language of the contract, it is irrelevant whether
Onder provided service to pre-existing Unique customers. As such, we cannot say that the
jury was unreasonable in implicitly concluding that Onder did not commit a material breach
of the contract. 
          2.       Unique’s Damages Argument
          As a sub-issue, Unique also asserts that the evidence supporting Onder’s claim for
damages is legally insufficient.


 In particular, Unique contends that Onder improperly
submitted benefit of the bargain damages rather than the appropriate measure of
damages—reliance damages. We first note that Unique’s entire damages argument is
premised upon a finding that the “Independent Contractor and Commission Agreement” is
subject to the statute of frauds, a contention that we have rejected earlier in this opinion,
and the application of the partial performance exception to the statute of frauds. In any
event, Unique relies on the decisions in Quigley v. Bennett, 227 S.W.3d 51, 54 (Tex. 2007)
and Exxon v. Breezevale Ltd., 82 S.W.3d 429, 441 (Tex. App.–Dallas 2002, no pet.) to
support its damages argument and asserts that it is grossly unfair to award Onder
$52,025.11 in damages for contacting a few clients on the telephone and speaking for less
than an hour. 
          In Quigley, a geologist, Bennett, attempted to secure compensation from a
leaseholder, Quigley, who decided to sell his interest in oil and gas leases. 227 S.W.3d at
52-53. Bennett assisted Quigley in marketing the leases to oil and natural gas companies,
which included the creation of color graphs and maps of the leases. Id. at 52. Quigley
purportedly told Bennett, “Don’t worry Bennett, I’ll take care of you.” Id. The leases were
eventually sold to Coastal Oil & Gas, with Quigley retaining an overriding royalty interest. 
Id. at 52-53. At that time, Bennett and Quigley briefly discussed Bennett’s compensation,
though not in depth. Id. at 53. Bennett’s compensation was never put in writing. Id. at 52. 
When Quigley refused to pay Bennett, Bennett sued and argued that “geologists are usually
compensated by receiving overriding royalty interests in the prospects they generate.” Id.
at 53. The supreme court determined that evidence of the value of the royalty interest to
the oil and gas lease cannot be given any weight or effect and cannot be considered as
evidence supporting the jury’s verdict because the statute of frauds barred recovery. Id. at
54. The supreme court specifically noted that allowing the recovery of benefit-of-the bargain
damages in a case where an agreement is not memorialized in writing circumvents the
protections of the statute of frauds. Id. It is clear to this Court that the holding in Quigley
as to damages is premised upon the applicability of the statute of frauds; thus, we conclude
that the Quigley case is inapposite. See id.
          The facts in Breezevale also pertain to an oral contract involving an interest in an oil
and gas lease. 82 S.W.3d at 434-35. The court of appeals concluded that the statute of
frauds applied to the oral agreement involving an oil and gas lease. Id. at 437. The court
of appeals also rejected two exceptions to the statute of frauds—promissory estoppel and
partial performance—that the jury concluded were applicable. Id. at 439-41. In analyzing
the partial performance exception to the statute of frauds, the court of appeals noted that
“the doctrine of partial performance also requires that the party acting in reliance on the
agreement suffer a substantial detriment for which there is no adequate remedy. . . . If
Breezevale were successful in removing the oral agreement from the statute of frauds
because of partial performance, Breezevale would be entitled to only reliance damages.” 
Id. at 441. Like Quigley, we do not find Breezevale to be applicable in this matter. The
dispute in Breezevale pertains to an agreement involving the conveyance of interests in real
property, and the court’s decision is premised upon a finding that the statute of frauds
applies. Furthermore, the Breezevale court’s analysis of damages hinges upon a finding
that the statute of frauds and the partial performance exception applies. Here, the jury
concluded, and we have affirmed, that the statute of frauds does not apply; thus, it was
unnecessary to determine whether the partial performance exception to the statute of frauds
applies. Moreover, the dispute in the instant case does not pertain to an interest in real
estate, which, as noted earlier, requires that the agreement be in writing. Therefore, based
on the foregoing, we conclude that the facts in Breezevale are distinguishable from the facts
in this case.
          The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure. See Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 760 (Tex.
App.–El Paso 2000, no pet.); see also Doss v. Homecomings Fin. Network, Inc., 210
S.W.3d 706, 713 (Tex. App.–Corpus Christi 2006, pet. denied). Benefit-of-the-bargain
damages are those “benefits [that] would have arisen only if” the alleged contract had been
honored. Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 636 (Tex. 2007). Benefit-of-the-bargain damages compute “the difference between the value as represented and the value
received.” Formosa Plastics Corp. USA, 960 S.W.2d at 49 (citing Arthur Andersen & Co.
v. Perry Equip Corp., 945 S.W.2d 812, 817 (Tex. 1997); Leyendecker & Assocs., Inc. v.
Wechter, 683 S.W.2d 369, 373 (Tex. 1984)). “Under the benefit-of-the-bargain measure,
lost profits on the bargain may be recovered if such damages are proved with reasonable
certainty.” Id. at 50.
          In the instant case, it is undisputed that Onder’s claim against Unique was for breach
of contract, specifically breach of the “Independent Contractor and Commission
Agreement.” In support of his damages claim, Onder submitted several spreadsheets,
which documented the names and payrolls of all of Onder’s clients from February 2007 to
the date of trial, July 2008. Onder multiplied each client’s total payroll figure for each month
by 1%, with the exception of one client whose payroll figure was multiplied by .65%, in
accordance with paragraph five of the “Independent Contractor and Commission
Agreement.” A summation of the calculations yielded “the difference between the value as
represented [in the “Independent Contractor and Commission Agreement”] and the value
received” as $52,025.11. See Formosa Plastics Corp. USA, 960 S.W.2d at 49; see also
Arthur Andersen & Co., 945 S.W.2d at 817; Leyendecker & Assocs., Inc., 683 S.W.2d at
373. This summation is the exact amount of damages awarded by the jury for Onder’s
breach of contract claim. Therefore, based on the evidence contained in the record, we
conclude that the jury was reasonable in arriving at its damages award. See City of Keller,
168 S.W.3d at 827-28; Vernagallo, 181 S.W.3d at 24; Brooks, 180 S.W.3d at 705. 
          Because Unique’s sufficiency arguments do not touch on any of the remaining
elements of Onder’s breach of contract cause of action, we need not address those
elements. See Tex. R. App. P. 47.1, 47.4. Therefore, in reviewing the evidence in the light
most favorable to the jury’s verdict, we conclude that the jury was reasonable in determining
that Unique breached the “Independent Contractor and Commission Agreement” and that
Onder sustained $52,025.11 in damages as a result of the breach. See City of Keller, 168
S.W.3d at 827-28; Vernagallo, 181 S.W.3d at 24; Brooks, 180 S.W.3d at 705. Further, in
reviewing the evidence in a neutral light, we cannot say that the jury’s conclusions are
manifestly unjust or against the great weight and preponderance of the evidence. See
Golden Eagle Archery, Inc., 116 S.W.3d at 761-62; see also Cain, 709 S.W.2d at 176. 
Accordingly, we overrule Unique’s third and fourth issues.
IV. Conclusion
          Having overruled all of Unique’s issues on appeal and having concluded the record
contains sufficient evidence to reform the trial court’s judgment, we affirm as modified.
 
 ROGELIO VALDEZ
                                                                                      Chief Justice
 
 
Delivered and filed the 9th
day of December, 2010.